# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ANTONIO SOLIS et al.,        )
)
        Plaintiffs,       )
)    Case No. 1:20-cv-02348
        v.            )
)    Hon. Judge Martha M. Pacold
HILCO REDEVELOPMENT LLC et al.,  )    Magistrate Judge Sunil R. Harjani
)
        Defendants.      )

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Jon Loevy
Scott Rauscher
Steve Art
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen
3rd Floor
Chicago, IL 60607

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 2

II.   BACKGROUND ....................................................................................................... 3

III.  TERMS OF THE SETTLEMENT & CLASS ADMINISTRATION PLAN ..................... 5

      A. Class Definition ............................................................................................. 5

      B. Monetary Relief ............................................................................................. 6

      C. Notice Plan and Settlement Fund Payments .............................................. 7

           1. The Proposed Claims Administrator. ................................................. 8

           2. The Notice Plan. ................................................................................... 9

                a. Direct Notice. ................................................................................ 9

                b. Publication Notice. ........................................................................ 9

                c. Additional Notice. ....................................................................... 10

           3. The Claims Administration Plan. Incentive Awards and Attorneys' Fees ................... 10

      D. Incentive Awards and Attorneys' Fees ....................................................... 12

      E. Release of Liability ...................................................................................... 12

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........ 12

      A. The Strength of the Plaintiffs' Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval ......................................... 13

      B. The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval ......................................................................... 15

      C. The Opinion of Competent Counsel Supports Preliminary Approval ........ 16

      D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval ..................................................................... 17

V.    THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED .................... 18

CONCLUSION ..................................................................................................................... 19

**TABLE OF AUTHORITIES**

**CASES:**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ...............................................................................................................................14

*Armstrong v. Board. of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)........................................................................................................................ *passim*

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D.Ill.2014) ................................16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)......................................................................18

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ..........................................................13,14

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)........................................................................12

*Freeman v. Grain Processing Corp*, 895 N.W.2d 105 (Iowa 2017) ..........................................15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ...........13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011)......................................................................................................................... 14

*In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ....................................................................................................................................12,18

*In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .........................................................................................................................................14

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016).................................................................................................18

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...................................................................... *passim*

*Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .......13

*Rogers v. BNSF*, 19 C 3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022) ....................................16

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011).............................................15

*Sutton v. Hoffman-La Roche Inc.*, 2020 WL 2745404 (N.J. Super. Ct. App. Div. May 27, 2020) ........................................................................................15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).................. *passim*

*Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) ...............17

**RULES**

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii)...................................................................18
Fed. R. Civ. P. 23(e)(1).................................................................................18
Fᴇᴅ. R. Cɪᴠ. P. 23(e)(2).................................................................................12

**ACTS**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA") ...........................................18

## I. INTRODUCTION

More than three years after the Defendants demolished a 300-foot smokestack that resulted in the pollution of and damage to the Little Village neighborhood and its residents, the parties have reached a proposed class action settlement agreement. The litigation to date has included motions to dismiss, significant discovery, and numerous discovery-related motions. Most recently, the parties engaged in settlement negotiations and mediation with the Honorable Wayne Anderson, accepting his mediator's proposal for settlement, and they have reduced their agreement to writing.

The proposed class action settlement agreement (the "Settlement" or "Agreement"), attached to this motion as Exhibit A, is fair and reasonable. For the reasons explained below it is deserving of this Court's preliminary approval. It provides for a gross common fund of $12,250,000. Plaintiffs estimate that after costs of notice and administration, a reasonable incentive award to Class Representatives of $5,000 each, and any attorneys' fees awarded by the Court are paid, a net common fund of $8,000,000 will be available to satisfy class members' claims, consisting of $1,000,000 for claims made by class members who suffered property damage ("Property Class members") and approximately $7,000,000 for claims made by individuals who are eligible for personal injury damages ("Personal Injury Class members").

Plaintiffs estimate that each Personal Injury Class member who submits a valid claim will be entitled to between $250 and $500, likely toward the higher end of that range. Personal Injury Class members will receive a *pro rata* share of the approximately $7,000,000 net fund, plus any part of the Property Class net fund remaining after Property Class claims are satisfied. Plaintiffs estimate that each Property Class member who submits a valid claim will be entitled to, and that the net common fund of $1,000,000 for those claims will not be exhausted. If the net common

fund limit for the property class of $1,000,000 is reached, each valid property-damage claim will be subject to a *pro rata* reduction.

This is an extraordinary result that provides a significant recovery for the injuries that class members suffered.

As a result, the Settlement should be viewed as fair, adequate, and reasonable. Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval to the Class Settlement, (ii) approving the proposed notice plan, and (iii) scheduling a final fairness hearing.

## II.    BACKGROUND

The Court described the facts alleged in this case in its March 23, 2022 motion to dismiss ruling. Exhibit B (Transcript of March 23, 2022 Hearing, *Solis et al. v. Hilco et al.,* Case No. 20-2348 (N.D. Ill. Mar. 23, 2022)). Plaintiffs claim that the Defendants blew up a smokestack at the Crawford Coal Power Plant in the Little Village neighborhood of Chicago on Easter weekend in April 2020, at the start of the COVID-19 pandemic, emitting a plume of debris and particulate matter across the neighborhood. The plume consumed the Little Village neighborhood without warning, settling on people and across the property of the Little Village community. Plaintiffs further alleged that Defendants conducted their demolition in violation of the rules, regulations, and customs governing the safe demolition and disposal of industrial sites. The plume caused the residents of Little Village difficulty breathing. Additionally, it coated real estate and personal property throughout the neighborhood.

The Court largely denied the Defendants' motions to dismiss. *See* Ex. B. Plaintiffs' claims for negligence and nuisance, as well as a strict liability claim for conducting an ultrahazardous activity, are currently being litigated.

In Plaintiffs view, discovery substantiated their allegations. For example, as noted above,

Plaintiffs were allowed to proceed on their ultrahazardous activity claim, meaning that they have a strict liability claim alleging that Defendants could not have conducted the demolition without causing the damage that Plaintiffs allege they caused. During discovery, testimony confirmed that this large dust cloud was the expected result of Defendants' actions. *See* Ex. E (Deposition of Ray Zukowski) at 133:6-13.

Plaintiffs' retained consulting experts, who have not been disclosed in the litigation, examined the content of the dust cloud that resulted from the demolition, its concentration as it travelled through the air, and the area in which it dispersed. Two of their conclusions are relevant here.[1] First, testing of samples from the site revealed that it is unlikely that the dust cloud contained contaminants of concern at levels that would negatively affect the health and wellbeing of residents in the short or long term. Second, the population and property affected centrally impacted by Defendants' implosion and dust cloud were in the  following area:



---

[1] Plaintiffs' counsel can obtain declarations from these experts setting out their findings to the extent the Court requires such evidence to resolve this motion.

This area extends from 33rd St. and Kedzie Avenue, west to 33rd St. and Kilbourn Avenue, north to Kilbourn Avenue and Cermak Road, east to Cermak Road and Ogden Avenue, northeast to Ogden Avenue and California Avenue, south to 26th St. and California Avenue, west to 26th St. and Sacramento Avenue, south to Sacramento Avenue and 31st St., west to 31st St. and Kedzie Avenue, south to 33rd St. & Kedzie Avenue.

The parties have engaged in settlement negotiations several times during the litigation. Most recently, the parties engaged in a mediation with the Honorable Wayne Andersen, and both sides accepted his mediator's proposal, resulting in the Settlement now before the Court.

## III.    TERMS OF THE SETTLEMENT & CLASS ADMINISTRATION PLAN

The terms of the Settlement are summarized here and are set forth in full in the Settlement Agreement attached as Exhibit A. The expertise of Plaintiffs' proposed claims administrator is described in the affidavit of Jacob Kamenir, senior director of notice at Simpluris, Inc., which is attached here as Exhibit C (Simpluris Declaration). The notice plan is attached here as Exhibit Group D (Proposed Notice and Claim Form).

### A.    Class Definition

The class and class members defined in the Agreement consists of two classes—one for individuals whose property received particulate matter from the plume (the "Property Class"), and another for individuals present in the area containing particulate matter from the plume (the "Personal Injury Class")—defined, respectively, as follows:

**Property Class:** All persons, property owners, lessees and businesses whose property received particulate matter from the Demolition and disposal of the smokestack at the Crawford Coal Plant and was located in the geographic area from 33rd St. and Kedzie Avenue, west to 33rd St. and Kilbourn Avenue, north to Kilbourn Avenue and Cermak

Road, east to Cermak Road and Ogden Avenue, northeast to Ogden Avenue and California Avenue, south to 26th St. and California Avenue, west to 26th St. and Sacramento Avenue, south to Sacramento Avenue and 31st St., west to 31st St. and Kedzie Avenue, south to 33rd St. & Kedzie Avenue (the "Property Class"). ; and/or

**Personal Injury Class**: All persons present in the geographic area from 33rd St. and Kedzie Avenue, west to 33rd St. and Kilbourn Avenue, north to Kilbourn Avenue and Cermak Road, east to Cermak Road and Ogden Avenue, northeast to Ogden Avenue and California Avenue, south to 26th St. and California Avenue, west to 26th St. and Sacramento Avenue, south to Sacramento Avenue and 31st St., west to 31st St. and Kedzie Avenue, south to 33rd St. & Kedzie Avenue during the Demolition (the "Personal Injury Class").

Ex. A § 1.7.

These class definitions are consistent with the classes proposed in Plaintiffs' Complaint. The Court presiding over this action and their family members, Defendants, people who properly opt out of the class pursuant to Federal Rule of Civil Procedure 23(e)(4), and counsel and their families are excluded. *Id.* These exclusions are standard in class action settlement agreements and do not materially change the class definition.

### B. Monetary Relief

The parties have agreed to create a gross common fund of $12,250,000, from which all class members will be paid, along with class counsel's fee award, incentive payments, and administration expenses. Ex. A §§ 1.18, 2.1.

The Agreement provides that a net fund up to $1,000,000 is allocated to the Property Class; it estimates that the a remaining net fund of approximately $7,000,000 will be available the Personal

Injury Class if the Court grants Plaintiffs' request for attorney's fees and expenses; and it provides that any of the $1,000,000 in funds allocated the Property Class that is not needed to satisfy the claims of members of the Property Class will be distributed on a *pro rara* basis to members of the Personal Injury Class. Ex. A § 3.1.

Class members will have three options when submitting their claims: (1) members of the Property Class may submit a claim form that includes receipts or other proof of injury to their property from the demolition; (2) members of the Personal Injury Class may submit a claim form that allows them to recover a *pro rata* share of the Personal Injury allocation; or (3) members of both the Property Class and the Personal Injury Class may do both of these things.

Plaintiffs estimate that each Personal Injury Class member who submits a valid claim will receive between $250 and $500 in payment, and likely toward the higher end of that range. That estimate is based on an approximate population in the geographic area defined above of 70,000 individuals, and an expected 20% claims rate. Regardless, each Personal Injury Class member will receive a *pro rata* share, per claim, of the Personal Injury Class net fund of approximately $7,000,000, plus any remainder of the Property Class net fund. Plaintiffs estimate that each property class member who submits a valid claim will receive compensation for the entire amount of damage to their property demonstrated in their claim form, and that the net common fund of $1,000,000 for those Property Class claims will not be exhausted. The remainder of the Property Class net fund will be added to the Personal Injury Class net fund to satisfy claims of Personal Injury Class members.

### C.    Notice Plan and Settlement Fund Payments

After requesting proposals from multiple class administration vendors, Plaintiffs have selected Simpluris, Inc. as the class administrator, and they propose that the Court approve

Simpluris as the claims administrator and approve the proposed notice and administration plan. *See* Ex. C. In addition, working with Simpluris, Plaintiffs have drafted a proposed notice and claim form, which Plaintiffs request the Court approve. *See* Ex. D.

**1. The Proposed Claims Administrator**. Simpluris has worked on thousands of class cases and has distributed billions of dollars in funds. It has expertise in administration of class action settlements involving much larger classes than those anticipated here. It has the necessary privacy and security protocols to ensure data and personal privacy of the class members. *See* Ex. C.

If approved, Simpluris will be responsible for the following tasks: (a) disseminating direct notice by U.S. mail to individually ascertainable class members; (b) hanging "door hanger" notice on the doors of accessible addresses within the class boundaries; (c) executing a publication notice program, consisting of a press release, publication of notice in newspapers, and digital media programmatically targeted to adults in the Chicago area; (d) establishing and maintaining a settlement toll-free telephone number; (e) developing and maintaining a settlement interactive website that will host class documents, as well as allow class members to submit claims online; (f) processing incoming claims, requests for exclusion, objections, and related class correspondence; (g) establishing and maintaining a 26 C.F.R. § 1.468B-1 compliant Qualified Settlement Fund; (h) calculating the amounts due to each class member pursuant to the settlement; (i) processing payments to class members who have made timely and valid claims; (j) preparing, processing, and filing all applicable tax forms and tax returns with state and federal agencies; and (k) providing appropriate notice to state and federal officials in compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"). *See* Ex. C.

**2. The Notice Plan**. The notice plan will include direct and publication notice.

a. Direct Notice.

The direct notice portion includes multiple components. Simpluris will create a mailing list comprised of the names and addresses of all class members who owned or leased residential or commercial property within the geographic boundaries on April 11, 2020, processing the addresses to ensure that the notice is deliverable and that those who have moved to new addresses are captured. Notice will be mailed as a postcard in both English and Spanish, with a detachable claim form and pre-paid business reply mail postage. The notice will also use both English and Spanish to direct class members to the settlement website. A draft of the postcard notice is attached as Exhibit D. Notices returned to Simpluris with a forwarding address will be re-mailed to the new address provided. Notices returned to Simpluris without forwarding addresses will be processed through a public records address verification search to locate updated addresses. *See* Ex. C.

In addition, Simpluris will place an abbreviated form of notice on the doors of all accessible addresses within the geographic boundaries in the form of door hangers. These door hangers will use both English and Spanish to direct class members to the settlement website. *Id.*

b. Publication notice.

At the same time as these direct notice efforts, Simpluris will execute a publication notice program, including a press release to Illinois media, publication of notice in the Chicago Tribune and La Raza newspapers, digital notice on the Facebook and Instagram social media platforms, and digital notice in the form of programmatic banner ads, targeting adults 18 and older in and around the 60623 zip code, for a planned approximately 100,000 impressions on Facebook and Instagram, and approximately 25,000 impressions through banner ads. All forms of publication notice will use both English and Spanish to direct class members to the settlement website. *Id.*

c. Additional notice.

In addition to the above-described direct and publication notice, Simpluris and class counsel will organize community outreach events, to present the notice and claims forms to class members and to assist them in filing claims. *Id.* Class Counsel anticipates that one or more of the Named Plaintiffs will also be involved in the community outreach program.

Simpluris will also maintain a settlement website, at which class members will be able to easily view information about the Settlement, including a map showing the geographic boundaries, relevant Court documents, the Settlement Agreement and long-form notice, important dates and deadlines, and community outreach events, and they will be able to file claims and select payment options. The website will be in English and Spanish and documents will be posted in both languages. The website address will be

Finally, a toll-free telephone number devoted to this case will be implemented to further apprise class members of the rights and options in the Settlement. The toll-free telephone number will be listed on the notice and the settlement website. The toll-free telephone number will utilize an interactive voice response system to provide Class Members with responses to frequently asked questions about the Settlement in both English and Spanish. This toll-free telephone number will be accessible 24 hours a day, 7 days a week. http://www.littlevillagesmokestack.com/.

The draft of the long-form notice that will appear on the case website is attached as Exhibit D.

**3. The Claims Administration Plan**. Simpluris will send paper claim forms as detachable, postage-paid postcards with the notice, in English and Spanish. A draft of the claim form is attached as Exhibit D. The Settlement Website will also have an online claim form that

will substantively match the paper claim form. The online claim form will be designed to be easily accessible and viewed from all types of electronic devices, and will be available in English and Spanish. *See* Ex. C.

Simpluris will coordinate with counsel to implement processes and procedures for validating class member claims, both for online and paper submissions. Simpluris will provide counsel timely reports on the quantity and type of claims submitted. Simpluris will immediately notify counsel if any requests for exclusion or objections are received. *Id.*

Simpluris will establish and maintain a 26 CFR § 1.468B-1 compliant qualified settlement fund for this Settlement. Simpluris will ensure that all federal and state statutory and regulatory tax filing and reporting requirements are fully complied with and completed. *Id.*

The claims administrator will pay individual settlement payments to class members within 60 days of the Effective Date of the Agreement. Ex. A ¶ 3.4. Once the Claims Deadline has passed, Simpluris will calculate individual award amounts based on the Settlement Agreement. Individuals who chose to receive their award payment digitally will receive tax documents, if required, via email. Individuals who chose to receive their award as a paper check will receive tax documents, if required, as an enclosure with the check. Any mailed award payment checks that are returned as undeliverable will be skip traced, as described in Paragraph 16, and remailed. *See* Ex. C.

Any funds from uncashed checks from either Property or Personal Injury Class members shall be redistributed to Property or Personal Injury Class members in a second round of payments on a *pro rata* basis, if such distribution is practicable, or to *cy pres* selected by Plaintiffs and class counsel and approved by the Court if a distribution is not practicable. Ex. A § 3.5.

D.    **Incentive Awards and Attorneys' Fees**

The Agreement calls for incentive awards in the amount of $5,000 to each of the three named Plaintiffs. Ex. A § 4.3. In addition, Plaintiffs' and class counsel have voluntarily agreed to limit their request for attorneys' fees to one-third of the fund value, after administrative expenses, litigation expenses, and incentive awards are deducted. Ex. A § 4.1. Plaintiffs' and class counsel's fees will be determined by a separate fee petition.

### E. Release of Liability

In exchange for the monetary and prospective relief described above, each settlement class member will be deemed to have released and forever discharged Defendants and all of their related subsidiaries and affiliates from any past present and future claims related to the April 11, 2020 implosion of the smokestack at the Crawford Coal Plant. Ex. A §§ 1.9, 5.1

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate," *see* FED. R. CIV. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which involves a well-established two-step process, *Armstrong v. Board. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step, preliminary approval, assesses whether the proposed settlement falls "within the range of possible approval," in order "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step, the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal quotations omitted), a multi-factor test must be used to determine whether a proposed settlement is fair, reasonable, and adequate, *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). At preliminary approval, courts consider the following four factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed. *See id.* (citing *Isby*, 75 F.3d at 1199).[2] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).[3] Here, each factor supports the Settlement, which this Court should find well within the range of possible approval.

### A. The Strength of the Plaintiffs' Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958

---

[2] One additional factor—the amount of opposition to the settlement—is not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT&T*, 270 F.R.D. at 349. Accordingly, it is not discussed here.

[3] In addition to these factors, the Seventh Circuit has identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723-26 (7th Cir. 2014). None of these warning signs is present here, as the Agreement (1) creates a settlement fund of $12,250,000, (2) with none of that money reverting to Defendants, and (3) with the completion of a short and simple claim form, (4) class members will receive real cash relief.

(N.D. Ill. 2011) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted); *see also Eubank.*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1200) (internal quotations omitted). In terms of tangible monetary relief, the proposed Settlement warrants approval, and that is true both when compared to other similar environmental class actions, and when viewed in light of the risks of a jury trial and potential appeals.

The first factor, an assessment of both the strength of the Plaintiffs' case and the amount offered in settlement, weighs strongly in favor of approval. Plaintiffs were in a strong position heading into discovery, given the effect of Defendants' demolition and its impact on the neighborhood. Since the incident, Defendant Hilco's own public comments about the events underlying the lawsuit and independent investigations have established strong evidence in

support of Defendants' liability on Plaintiffs' claims. Moreover, as discussed above, discovery *Supra* at 3-4 confirms that Plaintiffs had a strong case on liability. *Supra* at 3-4.

Nevertheless, victory at trial would not have been certain by any means. Of most concern is what damages the Defendants will ultimately be liable for. Investigation to date has not uncovered substantial damages claims suffered by any Personal Injury Class or Property Class member. A jury could award significantly less in damages than the Settlement provides. Given the damages suffered by Class members, the recovery in this case is more than fair and reasonable. *See*, *e.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009) (affirming approval of $4.45 million settlement in case alleging that for years a steel "mill wrongfully discharged harmful 'metal-like dust and flakes' that settle on their real and personal property, with recovery limited to $300 per household); *see also Gates v. Rohm And Haas Co.*, CIV.A.06-1743, 2008 WL 4078456, at *1 (E.D. Pa. Aug. 22, 2008) (approving settlement that provided *up to* $2 million in class action alleging that defendant polluted ground water for more than 30 years, with recovery limited to maximum of $1,400 reimbursement of MRI or other screening test for personal injury, and maximum $1,000 for property damage). Fortunately, the one-time smokestack demolition did not cause serious, long-term damages. The settlement thus compares favorably to other settlements in environmental class actions, such as those cited in this paragraph.

Moreover, the putative class inherently faces a risk with respect to certification of a personal-injury damages class, although there is precedent for certifying similar classes in environmental cases. *See*, *e.g.*, *Freeman v. Grain Processing Corp*, 895 N.W.2d 105 (Iowa 2017) (affirming class certification for liability and property damage in environmental nuisance case, and collecting cases for proposition that environmental nuisance cases are routinely certified);

*Sutton v. Hoffman-La Roche Inc.*, 2020 WL 2745404 (N.J. Super. Ct. App. Div. May 27, 2020) (noting that expert testimony in environmental class action may be used to determine class-wide damages and further stating that individualized damages are common in certified class actions). Moreover, if a jury were to find that Defendants were not liable for the claims for the personal-injury damages class—a point on which Plaintiffs bear the burden of proof—then the class members would obtain no recovery at all. In contrast to those unappealing scenarios, this Settlement will allow for all class members and the class representatives to receive monetary relief.

**B.      The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval**

Preliminary approval is also favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Plaintiffs believe that they could have defeated motions for summary judgment, successfully certified the case as a class action, and then prevailed at trial, but they are also certain that any judgment would have been appealed. Defendants might raise challenges to—among other things—the viability of the liability claims, whether class certification is appropriate, what relief is available to the class members, and the existence of injuries to the class members. Although Plaintiffs strongly believe in the correctness of their positions, losing these or other issues on appeal could reduce or eliminate a jury award. Regardless of the eventual outcome, those steps would have undoubtedly taken years to complete. Settlement entirely avoids the possibility that class members will not receive a recovery. Settlement also eliminates the likelihood that they would have to wait years to recover anything the case was litigated through trial and an eventual appeal. This factor therefore strongly supports preliminary approval.

**C.      The Opinion of Competent Counsel Supports Preliminary Approval**

The third factor this Court considers is the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Here, Plaintiffs Counsel's law firm has extensive experience litigating and settling class actions and other complex litigation of similar size and scope. Aside from this case, Plaintiffs' counsel at Loevy + Loevy have significant experience prosecuting class actions, they are successful trial lawyers, and they have secured some many large verdicts and settlements in class cases and others. *See*, *e.g.*, *Rogers v. BNSF*, 19 C 3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022) (trial counsel in the first ever BIPA trial resulting in initial entry of judgment exceeding $220 million and subsequent settlement); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (class co-counsel in the largest ever TCPA settlement of $76 million); *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) (class counsel in $55 million settlement plus an assignment of insurance-related claims following trial on liability and sample damages trials); *Flood v. Dominguez*, Case No. 08-cv-153 (N.D. Ind.) (Loevy & Loevy class counsel in $7.2 million settlement). Based on their significant experience litigating and trying class actions and other complex cases, Plaintiffs' Counsel is well-equipped to weigh in on the strength of the settlement, and believe that the Agreement is fair, reasonable, adequate, and deserving of preliminary approval.

### D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval

The last factor to consider concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is

significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp.*, 2011 WL 3290302, at *8 (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted).

Discovery was well underway prior to being stayed pending the outcome of mediation. The parties have exchanged thousands of pages of documents and had substantially completed their production of documents. They had and conducted four significant depositions, including a Rule 30(b) deposition of the general demolition-contractor on the construction project at issue in the case, as well as a representative of the subcontractor that was responsible for the carrying out the demolition on April 11, 2020. As noted above, Plaintiffs also hired their own experts to conduct analysis of the potential environmental issues stemming from the demolition and to analyze and define the areas that were most impacted by the demolition. Thus, sufficient discovery has been conducted for the parties and the Court to evaluate the claims and defenses.

## V.     THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED

When a punitive class action is settled, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *accord In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" when approving a settlement of a certified class action) (citation and internal quotations omitted); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would

be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield*, 2012 WL 366852, at *7.

The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352. As described above, the notice plan will provides comprehensive direct and publication notice to class members. The notice documents are written in plain language that is easy to understand. The notice plan also provides various, easily accessible methods for class members to submit claims.

Additionally, and in compliance with Rule 23(e)(4), the notice will additionally inform class members of their right to object to the Settlement or to exclude themselves from the Settlement within 45 days. Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, the Claims Administrator will send notice to the required government entities. (*Id.* § 4.2(g).)

Because the proposed notice plan effectuates direct notice to all class members, reaches other potential class members through various publication notices, and fully apprises class members of their rights, it comports with the requirements of due process and Rule 23 and should be approved.

## VI.    CONCLUSION

For the reasons addressed above, Plaintiffs respectfully request that the Court enter an order (1) granting preliminary approval of the Settlement, (2) approving the form and content of the notice, and ordering that it be effectuated, (4) scheduling a final fairness hearing, and (4) providing such other and further relief as the Court deems reasonable and just.

Date: December 4, 2023            RESPECTFULLY SUBMITTED,

                                  /s/ Steve Art
                                  *One of Plaintiffs' Attorneys*

Jon Loevy
Scott Rauscher
Steve Art
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen
3rd Floor
Chicago, IL 60607