IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO SOLIS, JUAN SOLIS, and JUAN RANGEL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br>-vs-<br><br>HILCO REDEVELOPMENT LLC, et al.,<br><br>                              Defendants. | )<br>)<br>)<br>)<br>)    Case No. 20-cv-02348<br>)<br>)    Chicago, Illinois<br>)    March 23, 2022<br>)    10:18 a.m.<br>)<br>) |

TRANSCRIPT OF TELEPHONIC PROCEEDINGS
BEFORE THE HONORABLE MARTHA M. PACOLD
TELEPHONIC APPEARANCES:

For the Plaintiffs:        MR. SCOTT R. RAUSCHER
                           Loevy and Loevy
                           311 North Aberdeen Street, 3rd Floor
                           Chicago, IL  60607
                           (312) 243-5900
                           Scott@loevy.com

For Defendants Hilco
Redevelopment, LLC,
HRE Crawford LLC,
And HRP Exchange
55, LLC:                   MR. BRENDAN EDWARD RYAN
                           Kirkland & Ellis
                           300 North LaSalle Street
                           Chicago, IL  60654
                           (312) 862-3620
                           Brendan.ryan@kirkland.com

Court Reporter:

            KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                 Official Court Reporter
              United States District Court
            219 South Dearborn Street, Suite 1426
                 Chicago, Illinois  60604
                 Telephone:  (312) 435-5569
            Kathleen_Fennell@ilnd.uscourts.gov

          * * * * * * * * * * * * * * * * *

     PROCEEDINGS REPORTED BY CERTIFIED STENOGRAPHER
          TRANSCRIPT PRODUCED WITH A COMPUTER

EXHIBIT B

1   APPEARANCES:   (Continued)

2   For Defendant
    Controlled
3   Demolitions, Inc.:     MR. ANDREW PAUL RICE
                           Sanchez & Daniels
4                          333 West Wacker Drive, Suite 500
                           Chicago, IL  0606
5                          (312) 641-1555
                           Arice@sanchezdh.com
6
    For Defendant Marine
7   Technology
    Solutions, LLC:        MR. THOMAS JAMES LYMAN, III
8                          Smith Amundsen, L.L.C.
                           150 North Michigan Avenue, Suite 3300
9                          Chicago, IL  60601
                           (312) 894-3200
10                         Tlyman@salawus.com

11  For Defendant MCM
    Management Corp.:       MR. EDWARD A. DEVRIES
12                          Wilson Elser Moskowitz Edelman & Dicker
                            55 West Monroe Street, Suite 3800
13                          Chicago, IL  60603
                            (312) 704-0550
14                          Edward.devries@wilsonelser.com

15

16

17

18

19

20

21

22

23

24

25

1　　(Proceedings heard in open court:)

2　　　　THE COURTROOM DEPUTY:  Good morning.  The United

3　States District Court for the Northern District of Illinois is

4　now in session, the Honorable Martha M. Pacold presiding.

10:18:22　5　　　　20 C 2348, Solis versus Hilco Redevelopment.

6　Counsel, if you can state your name for the record, we'll

7　start with plaintiffs' counsel.

8　　　　MR. RAUSCHER:  Good morning.  Scott Rauscher for the

9　plaintiffs.

10:18:41　10　　　　MR. RYAN:  Good morning, your Honor.  This is Brendan

11　Ryan on behalf of defendants, Hilco Redevelopment, LLC, HRE

12　Crawford, LLC, and HRP Exchange 55, LLC.

13　　　　MR. DEVRIES:  Good morning, your Honor.  This is

14　Edward Devries from Wilson Elser on behalf of MCM Management.

10:19:03　15　　　　MR. LYMAN:  Good morning, your Honor.  This is Tom

16　Lyman, L-Y-M-A-N, on behalf of Marine Technology Solutions.

17　　　　MR. RICE:  Good morning, your Honor.  Andrew Rice on

18　behalf of Controlled Demolitions, Inc.

19　　　　THE COURT:  All right.  Good morning, everyone.

10:19:24　20　　　　Can I just ask is there anyone else who's planning to

21　participate in the hearing?

22　　　　All right.  Thanks.  Sounds like we have everyone

23　then.

24　　　　Let me first just say thank you for your patience

10:19:41　25　with the rescheduling of the hearing and also with starting a

EXHIBIT B

1    little bit late this morning.

2         Let me also just ask if you're not speaking if you

3    could please just mute your line.  That would -- that would

4    make things easier in case there's any kind of feedback.

10:20:02    5         Let me also before I -- so we're here for a ruling on

6    the motion to dismiss, and I am prepared to proceed to the

7    ruling.  Before I do that, let me just ask is there anything

8    about the status of the case or any type of developments that

9    you'd like to bring to my attention before I turn to the

10:20:30   10   ruling?

11        MR. RYAN:  On behalf of the Hilco defendants, we

12   don't have anything, your Honor.

13        MR. RAUSCHER:  That would be the same for plaintiffs,

14   Judge.

10:20:53   15        THE COURT:  Okay.

16        MR. DEVRIES:  Nothing from MCM.  Thank you.

17        THE COURT:  Thanks then, and I'll go ahead and turn

18   to the ruling then.

19        Let me also just say up front about the format of the

10:21:04   20   hearing or, I'm sorry, of the ruling, that I will be giving

21   the ruling from the bench today and I will give my reasons

22   from the bench.

23        And so first of all, I just appreciate your bearing

24   with me because it will take some time to walk through the

10:21:23   25   ruling and the reasoning.

1       I also wanted to let you know that I will be giving

2   all my reasons from -- during the ruling today on the record.

3   I do not plan to issue a separate written order, and the

4   reason for that is just speed.  I can get you a decision

5   faster with this format, and so that's really why I'm doing

6   that.

7       So if anyone needs the reasoning, then I would

8   recommend that you order the transcript.  I will issue a

9   minute entry that summarizes and gives the bottom line, but

10  the reasoning will be on the record here.

11      So with that, let me then turn to the ruling.  And,

12  again, I'll just ask for your patience as I walk through it.

13      Plaintiffs Antonio Solis, Juan Solis, and Juan Rangel

14  brought this putative class action against defendants who were

15  involved in the demolition of a smokestack in the Little

16  Village neighborhood of Chicago.

17      Plaintiffs allege that the April 2020 smokestack

18  demolition towards the beginning of the COVID pandemic

19  resulted in a toxic dust cloud that coated Little Village and

20  caused harm to plaintiffs and the putative class.  Defendants

21  have moved to dismiss all of plaintiffs' eight claims.

22      And I will give reasons for each of these particular

23  claims, but just to summarize up front, I will grant in part

24  and deny the motion.

25      So Counts I, ultra hazardous activity, II,

10:21:43

10:22:04

10:22:27

10:22:42

10:23:04

EXHIBIT B

1  negligence, and IV, private nuisance, may proceed.

2  Count V, trespass, is dismissed without prejudice to

3  the extent that it sounds in intentional trespass, but the

4  claim may go forward as a negligent trespass claim.

10:23:33  5  Counts VI for battery and assault, or assault and

6  battery, VII, medical monitoring, and VIII, Title VI, are

7  dismissed without prejudice in their entirety for all

8  plaintiffs.

9  Count III, negligent infliction of emotional

10:24:00  10  distress, is dismissed without prejudice as to plaintiff --

11  plaintiffs Jose Solis and Juan Rangel but survives for

12  plaintiff Antonio Solis.

13  Going forward then are the following claims:  For

14  Antonio Solis:  Count I, ultrahazardous activity; Count II,

10:24:28  15  negligence; Count III, negligent infliction of emotional

16  distress; Count IV, private nuisance; Count V, negligent

17  trespass.

18  For plaintiff Jose Solis:  Count I, ultrahazardous

19  activity; Count II, negligence; Count IV, private nuisance;

10:24:48  20  Count V, trespass, negligent trespass.

21  For plaintiff Juan Rangel:  Count I, ultrahazardous

22  activity; Count II, negligence; Count IV, private nuisance;

23  Count V, negligent trespass.

24  The remaining counts are dismissed.

10:25:05  25  Because this is the first dismissal of any claims,

1    all dismissals are without prejudice, and plaintiffs will be

2    given an opportunity to amend their complaint. This case has

3    already been referred to Judge Harjani for discovery and

4    settlement. I will expand that referral to include setting

10:25:22   5    deadlines for amended pleadings.

6    I will also direct the parties to exhaust settlement

7    possibilities in light of this ruling, and then I will ask the

8    parties to submit a joint status report on the case generally

9    and to include any update on settlement by six weeks from

10:25:48   10    today.

11    So that's the summary, and I'll now walk through the

12    details.

13    In terms of the background and the factual

14    allegations, those allegations are in the first amended

10:26:06   15    complaint, and so I'm going to assume that the parties are

16    familiar with that complaint. I'm assuming all well-pleaded

17    facts alleged in the complaint are true. I am construing them

18    in the light most favorable to plaintiffs.

19    I will then turn to the legal standard.

10:26:34   20    When reviewing a motion to dismiss under

21    Rule 12(b)(6), as I mentioned, I accept as true all factual

22    allegations in the complaint and draw all permissible

23    inferences in plaintiffs' favor.

24    To survive a motion to dismiss, a plaintiff must

10:26:48   25    allege enough facts to state a claim to relief that is

EXHIBIT B

1 | plausible on its face.  A claim has facial plausibility when
2 | the plaintiff pleads factual content that allows the Court to
3 | draw the reasonable inference that the defendant is liable for
4 | the misconducts alleged.

10:27:03
5 | Federal pleading standards do not require detailed
6 | factual allegations, but they require more than an unadorned,
7 | the-defendant-unlawfully-harmed-me accusation.  Naked
8 | assertions devoid of further factual enhancement are
9 | insufficient, and it is the defendants' burden to establish
10:27:23
10 | the complaint's insufficiency.

11 | Turning then to the analysis of the individual
12 | claims.  Beginning with some points about the ultrahazardous
13 | and negligence-based claims, so that would be Counts I, II,
14 | III and VII, defendants contend that the named plaintiffs
10:27:51
15 | cannot recover on any of their negligence-based claims,
16 | meaning negligence, negligent infliction of emotional
17 | distress, trespass to the extent that's based in negligence,
18 | private nuisance, and medical monitoring, and their claim for
19 | ultrahazardous activity.

10:28:10
20 | Defendants contend that, under Illinois law, a
21 | plaintiff may not recover damages under a negligence theory or
22 | strict liability without a present injury.  Defendants contend
23 | that plaintiffs here have alleged only increased risk of
24 | future harm without any alleged present harm.  According to
10:28:31
25 | defendants, mere exposure to a hazardous substance is not a

EXHIBIT B

1 present injury under Illinois tort law.

2 In response, plaintiffs argue that defendants'

3 argument for dismissal depends on defendants' own version of

4 the facts that contradicts the complaint and that that

10:28:50 5 approach is improper at the motion to dismiss stage and, in

6 and of itself, warrants denial of the motion to dismiss.

7 Plaintiffs contend that they have alleged injuries to their

8 persons and property, and they contend that the complaint

9 alleges all the elements of a negligence claim under Illinois

10:29:10 10 law.

11 Plaintiffs contend that defendants have imposed a far

12 too stringent pleading standard. They also argue that

13 Illinois law recognizes exposure to harmful substances as an

14 injury.

10:29:26 15 I'll start with the plaintiffs' negligence count and

16 then address defendants' other arguments that all

17 negligence-based counts and the strict liability claim must

18 also be dismissed.

19 So starting with negligence, Count II, defendants

10:29:40 20 contend that the named plaintiffs here have not alleged a

21 present physical injury sufficient to assert a negligence

22 claim under Illinois tort law. Neither Jose Solis nor Juan

23 Rangel has alleged that they were physically harmed by

24 defendants' alleged negligence. Only Antonio Solis alleges to

10:30:07 25 have come into contact with the dust and suffered physical

1   side effects after that contact.

2       Jose Solis alleges that the dust invaded his property
3   and accumulated in his home.

4       Juan Rangel and Antonio Solis allege that they are
5   property owners in Little Village and that the remnants of the
6   dust cloud coated their neighborhoods.  These allegations --
7   so Antonio Solis is alleging physical side effects.  Juan
8   Rangel and Jose Solis are alleging that they are property
9   owners and that the remnants of the dust cloud coated their
10  neighborhood.

11      So there are different types of allegations here as
12  between the plaintiffs, but these allegations are sufficient
13  to state claims for negligence.

14      Negligence requires duty, breach, causation, and
15  damage.  Damage can be -- there can be either damage,
16  personal-injury-type damage, or there can be property damage.
17  *See Clancey v. McBride*, 388 Illinois 35, 38 (1929); *see also*
18  *Dargie v. East End Bolders Club* 346, Ill. App. 480, 491
19  (1952).  So there can be -- there can be negligence claims
20  either for injury to person or injury to property.

21      Under Illinois law, when a plaintiff's negligence
22  claim is premised upon injury to person, a plaintiff must
23  allege a present physical injury.  In that circumstance, it is
24  not sufficient for a plaintiff to allege an increased risk of
25  future harm.  In *Berry v. City of Chicago*, 2020 IL 124999, the

10:30:28
10:30:53
10:31:09
10:31:42
10:32:04

1   Illinois Supreme Court analyzed its prior decisions and held

2   that "an increased risk of harm is not itself an injury" for

3   purposes of tort law.  *Berry*, 2020 IL 124999, paragraph 33.

4   See also paragraph 38.

10:32:29   5   More precisely, *Berry* held:  "A plaintiff who suffers

6   bodily harm caused by a negligent defendant may recover for an

7   increased risk of future harm as an element of damages, but

8   the plaintiff may not recover solely for the defendant's

9   creation of an increased risk of harm."  *Berry*, 2020

10:32:54   10   IL 124999, paragraph 38.  *See also Williams v. Manchester*, 228

11   Ill.2d 404, 425 (2008).

12   At least one other court in this district has applied

13   *Berry* in an analogous context and has concluded that a

14   plaintiff must allege a present physical injury to support a

10:33:17   15   negligence claim, again, when the negligence claim is a

16   personal -- a claim for personal injury.  *Leslie v. Medline*

17   *Industries*, 2021 WL 4477923 (N.D. Ill., September 30, 2021),

18   read *Berry* as requiring that "in a negligence action, a

19   plaintiff must allege a present physical injury, especially to

10:33:48   20   recover damages for future harm connected to that injury."

21   *Id.* at *9.

22   So applying these principles here with respect to

23   Antonio Solis's claim, the complaint alleges that Antonio

24   Solis was in his house when the dust cloud from the demolition

10:34:09   25   "descended" and that the dust "seeped" into his home.  Docket

1  13, paragraph 10.  Antonio Solis alleges that he "later

2  experienced headaches when he went outside as well as a sore

3  throat."  *Id.*

10:34:32

4        Accepting these allegations as true and drawing all

5  reasonable inferences in Antonio Solis's favor, these

6  allegations are sufficient to allege that Antonio Solis

7  suffered a physical injury in the immediate aftermath of the

8  demolition due to the dust cloud and that this injury may have

9  been caused by defendants' negligent conduct.

10:34:49

10        Defendants allege that Antonio Solis's injuries are

11  *de minimis* and insufficient to establish the present physical

12  injury requirement of an Illinois tort claim.  They cite

13  *Sondag v. Pneumo Abex Corp.*, 2016 IL App (4th) 140918, in

14  which a plaintiff claimed that defendant's tape contained

10:35:13

15  asbestos and caused him to develop pleural plaques and

16  interstitial fibrosis.  However, that case I believe is

17  distinguishable in that it was first -- it involved products

18  liability claims, and so that is -- that is one distinction.

19        It also was decided on appeal from the denial of a

10:35:39

20  motion for a directed verdict, and that's apparent from

21  paragraph 1 of the case, which refers to the evidence before

22  the jury.  And so contrary to defendant's assertion, *Sondag*

23  does not stand for the broad proposition that plaintiffs must

24  allege facts at the pleading stage establishing that they

10:36:06

25  suffered from some significant ongoing or chronic harm.

1    *Sondag* appears to have addressed a specific question
2    related to products liability actions and at a later stage
3    than we are -- this motion is at in this case.

4    Defendants also argue that the plaintiffs' alleged
5    injury must be ongoing.  However, while *Berry* requires that a
6    plaintiff must plead a present injury in order to recover
7    damages for an increased risk of future harm, *Berry* does not
8    necessarily require plaintiffs' present injury to be ongoing.
9    See *Berry* at paragraph 38.  Defendants argue that Antonio
10   Solis's injuries are *de minimis*, are not ongoing, and do not
11   create a risk of future harm, but these issues are not
12   appropriate for resolution at the pleading stage because they
13   relate to the question of Antonio Solis's damages rather than
14   failure to plead a negligence claim.

15   Furthermore, defendants have not cited case law from
16   Illinois suggesting that even minor *de minimis* injuries are
17   insufficient to state a claim for negligence.

18   Also, Illinois requires fact pleading, a more
19   rigorous standard than federal notice pleading.  *Custom*
20   *Classic Automobiles v. Axalta Coating Systems*, 2020 WL 7319569
21   at *4, note 8, (N.D. Ill. December 11, 2020), but in federal
22   court, federal pleading standards apply.  *See Windy City Metal*
23   *Fabricators v. CIT Tech Financial Services*, 536 F.3d 663, 670
24   (7th Cir. 2008).  At this stage, all that Antonio Solis must
25   plead is that he suffered a present injury attributable to the

1    defendants' negligent conduct, which he has.

2            Additionally, Antonio Solis, Jose Solis, and Juan

3    Rangel all allege that they are property owners in Little

4    Village.  A claim for negligence can be supported, as I

10:38:19    5    mentioned earlier, based upon damage to person or damage to

6    property.  While the complaint does not allege that Jose Solis

7    has suffered any physical injury from the dust cloud, it does

8    allege that the dust "left a thick residue in and around his

9    home."  Docket 13, paragraph 11.  The complaint further

10:38:42    10    alleges that "the dust has even penetrated inside the homes of

11    community members, requiring significant cleaning just to make

12    those residences safe and habitable."  Paragraph 73.

13            Again, construing these facts in the light most

14    favorable to plaintiff, it is plausible that the defendants'

10:39:01    15    negligent actions caused damage to Jose Solis's property by

16    leaving a layer of dust in and around his home that required

17    significant cleanup.

18            As to plaintiffs Antonio Solis and Juan Rangel, both

19    allege that they are property owners and that dust accumulated

10:39:18    20    in their neighborhoods.  Drawing all reasonable inferences in

21    their favor, these allegations are also enough for me to infer

22    that the dust coated their properties and caused damage.

23            In short, as to Count II, which is negligence, the

24    motion to dismiss is denied with respect to all plaintiffs.

10:39:38    25            Defendants contend that if plaintiffs' negligence

1  claim fails, then all other claims with negligence as an

2  element, as well as plaintiffs' strict liability claim, must

3  also be dismissed.  This would pertain to Counts I, III, IV

4  and V.  Plaintiffs contend that defendants waived this

10:40:04  5  argument by not sufficiently developing it in their briefs.

6  However, because I have found and as I've just

7  explained, all plaintiffs have pleaded enough to state claims

8  for negligence, there is no reason to reach this dispute, and

9  so the argument that plaintiffs have failed to plead lack of

10:40:23  10  damages sufficient to state a negligence claim is not a basis

11  to dismiss any of the other negligence-based claims or

12  plaintiffs' strict liability claim.

13  Turning next to Count III, which is the negligent

14  infliction of emotional distress claim.  Defendants argue that

10:40:43  15  plaintiffs failed to state a claim for negligent infliction of

16  emotional distress, which I'll refer to as NIED, because

17  plaintiffs have not suffered a physical injury or impact.

18  Plaintiffs respond that a direct-victim NIED claim

19  requires either contemporaneous physical impact or injury, not

10:41:03  20  both.  Docket 93 at page 27.  They contend that they have

21  alleged physical injuries to their persons and property caused

22  by the defendants' toxic dust cloud and that there can be no

23  reasonable dispute that the complaint, taken as true, alleges

24  that plaintiffs suffered a contemporaneous physical impact

10:41:24  25  sufficient for direct-victim NIED liability by coming in

1  contact with the dust plume.  *Id.* at 27.

2  Plaintiffs further argue that because they have

3  alleged a physical impact from the dust cloud, they were not

4  also required to allege physical injury resulting from the

5  distress caused by defendants' negligent conduct.  *Id.* at 28.

6  Both parties concede that plaintiffs are proceeding

7  under a direct-impact NIED theory rather than a bystander

8  theory.  However, the plaintiffs seem to dispute the current

9  state of law on the physical impact or injury requirement of

10  direct-impact NIED claims.

11  The parties' briefs primarily rely on three Illinois

12  Supreme Court cases to make their respective arguments:

13  *Rickey v. Chicago Transit Authority*, 98 Ill.2d 546 (1983),

14  *Pasquale v. Speed Products Engineering*, 166 Ill.2d 337 (1995),

15  and *Schweihs v. Chase Home Finance*, 2016 IL 120041.

16  *Rickey* and *Pasquale* concerned plaintiffs proceeding

17  under bystander NIED theories.  *Rickey* held that a bystander

18  who was in a zone of physical danger and who, because of the

19  defendant's negligence, has reasonable fear for his own safety

20  has a cause of action for physical injury or illness resulting

21  from emotional distress.  "This rule does not require that the

22  bystander suffer a physical impact or injury at the time of

23  the negligent act, but it does require that he must have been

24  in such proximity to the accident in which the direct victim

25  was physically injured, that there was a high risk to him of

10:41:42

10:42:02

10:42:23

10:42:47

10:43:09

1   physical impact.  The bystander, as stated, must show physical

2   illness or illness as a result of the emotional distress

3   caused by the defendant's negligence."  98 Ill.2d at 555.

4          *Pasquale*, however, concerned a case of strict

10:43:30   5   liability, not negligence.  It reaffirmed the Illinois rule

6   that "there exists in Illinois no recovery for emotional

7   distress under a theory of strict liability."  166 Ill.2d at

8   321.

9          Schweihs clarified the state of the law on NIED

10:43:51   10  direct-impact claims.  The Illinois Supreme Court held that

11  "precedent makes clear that a direct victim's claims for

12  negligent infliction of emotional distress must include an

13  allegation of contemporaneous physical injury or impact ...

14  this court did not eliminate the impact rule for negligent

10:44:11   15  infliction of emotional distress claims brought by direct

16  victims."  2016 IL 120041, paragraph 38.

17         Thus, Illinois law does require that direct-impact

18  victims allege a contemporaneous physical injury or physical

19  impact.  The question then is whether plaintiffs' complaint

10:44:47   20  alleges either one of those.  Neither party cites good case

21  law on what Illinois courts consider a physical impact or

22  sufficient physical injury to support an NIED claim.

23         Defendants point out that the U.S. Supreme Court in

24  *Metro-North Commuter Railroad Company v. Buckley* held that

10:45:14   25  under the Federal Employers Liability Act, or FELA, an NIED

plaintiff's long exposure to asbestos dust did not constitute physical impact as that term was used in another court decision interpreting FELA. 521 U.S. 424, 432 (1997). While *Buckley* presents a compelling case for why the term "physical impact" under traditional tort law does not encompass contact that amounts to no more than an exposure, *id.*, Illinois law allows an NIED claim where a plaintiff suffers a physical impact or physical injury. *Schweihs*, 77 N.E.3d at 58.

Here, applying federal pleading standards and drawing all reasonable inferences in favor of plaintiffs, Antonio Solis has sufficiently pleaded a physical injury from the defendants' negligent conduct. He alleges that he suffered physical symptoms -- headache and sore throat -- in the immediate aftermath of being exposed to defendants' dust cloud caused by defendants' negligence.

As to Jose Solis and Juan Rangel, however, the complaint does not allege that they ever came into direct contact with the dust cloud or suffered any physical injury because of it. While plaintiffs attempt to rely on the more general allegations of the harm that the dust cloud caused to residents of Little Village as a whole, at this stage in the proceedings, Jose Solis and Juan Rangel must rely on the specifics of their own experience in order to survive the motion to dismiss.

And Count III is dismissed without prejudice with

10:45:41

10:46:09

10:46:27

10:46:47

10:47:06

1    respect to Jose Solis and Juan Rangel.

2         Turning to medical monitoring, Count VII.  Defendants

3    argue that medical monitoring is not an independent tort in

4    Illinois.  Plaintiffs state that although defendants may be

5    correct that the Illinois Supreme Court has not yet weighed in

6    on whether this unbroken line of cases recognizing medical

7    monitoring claims under Illinois law is correct, defendants do

8    not suggest that the Illinois Supreme Court has ever

9    questioned the existence of such a claim either.

10        Medical monitoring is not an independent claim under

11   Illinois law but is a form of damages that a plaintiff who

12   asserts a successful negligence claim may seek.

13        In the *Berry* case, the Illinois Supreme Court said,

14   "Simply pleading a need for medical monitoring prompts the

15   question:  Why is medical monitoring needed?  Plaintiffs

16   themselves allege in their complaint that the need for medical

17   monitoring is based on their increased risk of harm."  Without

18   an increased risk of future harm, plaintiffs would have no

19   basis to seek medical monitoring.  In other words, plaintiffs'

20   allegation that they required diagnostic medical testing is

21   simply another way of saying they have been subjected to an

22   increased risk of harm, and in a negligence action, an

23   increased risk of harm is not an injury.

24        "A plaintiff who suffers bodily harm caused by a

25   negligent defendant may recover for an increased risk of

10:47:26

10:47:44

10:48:03

10:48:20

10:48:38

1  future harm as an element of damages, but the plaintiff may

2  not recover solely for the defendant's creation of an

3  increased risk of harm."  That's from *Berry*, 2020 IL 124999 at

4  paragraphs 37 to 38, and in particular that portion of that

10:48:59  5  quotation that says that a plaintiff who suffers bodily harm

6  caused by a negligent defendant may recover for an increased

7  risk of future harm as an element of damages, but the

8  plaintiff may not recover solely for the defendants' creation

9  of an increased risk of harm.

10:49:16  10  If a plaintiff's negligence claim failed in *Berry*

11  because risk of future harm is merely an element of damages

12  and is not an injury in and of itself, then as a matter of

13  logic, medical monitoring cannot be an independent tort.

14  Plaintiffs' brief argues that courts have repeatedly

10:49:35  15  recognized that Illinois permits medical monitoring claims as

16  an independent tort, see docket 93 at page 30, and then

17  includes a long string cite of cases.  However, all of these

18  cases were decided pre-*Berry*.  Nor did any of them explicitly

19  recognize medical monitoring as an independent cause of

10:49:51  20  action.

21  To be clear, this is not to say that a plaintiff like

22  Antonio Solis who has alleged a negligence claim based on a

23  physical injury cannot recover as a form of damages medical

24  monitoring.  So, again, there's not a rule that bars a

10:50:15  25  plaintiff like Antonio Solis from seeking medical monitoring

1   as a form of damages, but medical monitoring itself is not an

2   independent claim that -- or independent count that plaintiffs

3   can bring as an independent, free-standing claim.

4   And so the medical monitoring claim, Count VII, is

5   dismissed without prejudice for all plaintiffs.

10:50:42

6   And I also would add that other plaintiffs, like Jose

7   Solis and Juan Rangel, have not suffered physical injury, and

8   so I -- I guess I would question whether, you know, under the

9   language in *Berry,* whether those types of plaintiffs could

10  recover because, again, *Berry* says a plaintiff who suffers

10:51:15

11  bodily harm caused by a negligent defendant may recover for an

12  increased risk of future harm as an element of damages.  So

13  the premise of that language is that it is a plaintiff who

14  suffers bodily harm that can seek damages for medical

15  monitoring.

10:51:38

16  Turning to ultrahazardous activity, which is Count I,

17  defendants argue that plaintiffs have failed to state an

18  ultrahazardous activity claim.  They claim that because the

19  complaint alleges that the smokestack could have been

20  demolished in a safe manner -- i.e., with the exercise of

10:51:56

21  reasonable care -- plaintiffs cannot, as a matter of law,

22  state a claim for strict liability.

23  Plaintiffs respond that they have adequately alleged

24  a strict liability claim, that the Restatement factors do

25  support their claim, and that this Court should not dismiss

10:52:11

the strict liability claim merely because plaintiffs have also alleged a negligence claim.

They argue that even if they could not ultimately succeed on their strict liability claim, they are entitled to plead alternative theories of relief.

Plaintiffs could not ultimately recover under both a theory of negligence and strict liability.  *See Indiana Harbor Belt Railroad Company v. American Cyanamid Company*, 916 F.2d 1174, 1179 (7th Cir. 1990); *see also Nave v. Rainbo Tire Service*, 123 Ill. App. 3d, 585, 591 (1984).

But plaintiffs are entitled to plead alternative theories of relief at the pleading stage, regardless of consistency.  *See* Federal Rule of Civil Procedure 8(d)(3); *see also Lindgren v. More*, 907 F.Supp. 1183, 1190 (N.D. Ill. 1995).

Defendants rely on *Campos v. BP Products*, 2014 WL 5858625 (N.D. Ill., November 12, 2014), where plaintiffs allege both strict liability and negligence claims against defendants who sold and stored petcoke, a dust-like byproduct of crude oil refining.  The court dismissed because plaintiffs' strict liability claim because plaintiffs have not alleged that petcoke can never be stored safely -- to the contrary, they allege that enclosing, covering, or spraying petcoke with water would reduce the likelihood of harm.  *Id.* at 8.

1    Here, defendants point to two paragraphs in

2    plaintiffs' complaint, paragraphs 93 and 94, and argue that

3    plaintiffs allege that adequate controls could have been put

4    in place to eliminate emission of dust.  Docket 76 at page 27.

10:54:16    5    But plaintiffs' complaint actually states that each of the

6    defendants knew or should have known that the demolition and

7    disposal would generate large amounts of dust laden with

8    harmful substances, that such dust would be geographically

9    disseminated by wind, and that such dust would likely be

10:54:35   10    carried to the plaintiffs' properties and residences and

11    expose the plaintiffs if not adequately controlled.  Docket

12    13, paragraph 93.

13    Unlike in *Campos*, plaintiffs have not definitively

14    pleaded themselves out of a strict liability claim by alleging

10:54:49   15    that there was actually a safe way to conduct the demolition.

16    And, again, plaintiffs can proceed on both theories regardless

17    of their consistency, and so I will not dismiss the

18    ultrahazardous activity claim merely because plaintiffs have

19    also alleged negligence.

10:55:06   20    Ultimately, disposition of the ultrahazardous

21    activity claim is not appropriate at the pleading stage.

22    Because this question turns on a myriad of Restatement

23    factors, this question is better left for summary judgment

24    after the parties have developed the record.

10:55:20   25    Whether an activity is ultrahazardous and subjects

1  the defendant to strict liability depends on six factors:  (a)

2  existence of a high degree of risk of some harm to the person,

3  land, or chattels of others; (b) likelihood that the harm that

4  results from it will be great; (c) inability to eliminate the

10:55:42  5  risk by the exercise of reasonable care; (d) extent to which

6  the activity is not a matter of common usage; (e)

7  inappropriateness of the activity to the place where it is

8  carried on; and (f) extent to which its value to the community

9  is outweighed by its dangerous attributes.  *In re Chicago*

10  *Flood Litigation,* 680 N.E.2d 265, 279 (Ill. 1997).

11  Defendants are correct that whether an activity is

12  abnormally dangerous is a question of law.  *See American*

13  *Cynamid*, 916 F.2d at 1176.  Defendants argue that courts

14  routinely dismiss ultrahazardous activity claims where the

10:56:22  15  complaint alleges that the activity can be made safer by the

16  exercise of care.  They primarily rely on *American Cynamid* on

17  this point.  But *American Cynamid* was resolved on appeal from

18  a grant of summary judgment.  916 F.2d at 1175 to 76.

19  It's true that *American Cynamid* reiterated that

10:56:43  20  questions of strict liability are questions of law resolved by

21  the Court, but the case does not suggest that courts must

22  resolve the question at the pleading stage.  To the contrary,

23  the decision left open the possibility that there could be

24  questions of fact related to determinations of strict

10:56:57  25  liability.  *Id.* at 1182.

1    In short, while it is true that some federal courts

2  resolve this question at the pleading stage, *see Dominick's*

3  *Finer Foods v. Amoco Oil*, No. 93 C 4210, 1993 WL 524808, (N.D.

4  Ill. December 15, 1993), there is no rule requiring that this

10:57:18    5  question be resolved now.

6    The parties vigorously debate the Restatement

7  factors, but many of these factors depend upon factual

8  questions that I cannot resolve at the pleading stage and that

9  would be better left until there is a full record.  And while

10:57:34   10  ultimately whether defendants engaged in an ultrahazardous

11  activity is a question of law, I'm not prepared to say that

12  defendants' activity here was not ultrahazardous without

13  further development of the record.

14    It is also not the case that, as a matter of law,

10:57:50   15  demolition is per se not an ultrahazardous activity.

16  Defendants' briefing relied significantly on *Great American*

17  *Insurance Company of New York v. Heneghan Wrecking and*

18  *Excavating Company*, 2015 IL App (1st) 133376.  There, the

19  Illinois appellate court found, after applying the Restatement

10:58:16   20  factors, that in the circumstances of that case, the

21  demolition of a building did not support a finding of strict

22  liability.  *Id.*, paragraph 38.  The court's determination was

23  highly dependent on the specific facts and circumstances of

24  that case.  *Great American* also was resolved on an appeal from

10:58:31   25  a summary judgment order.

1    In short, plaintiffs have adequately pleaded a claim
2  for ultrahazardous activity, can proceed under both a theory
3  of negligence and the theory of strict liability, and I will
4  not definitively resolve the question of whether defendants
5  engaged in an ultrahazardous activity at this point in the
6  litigation.

7    So the motion is denied with respect to Count I for
8  all plaintiffs.

9    Turning to assault and battery, which is Count VI.
10 Defendants next argue that plaintiffs failed to state claims
11 for assault and battery because the complaint fails to allege
12 that defendants intended plaintiffs to be touched by dust or
13 intended to create a reasonable fear of an imminent touching.
14 According to defendants, both assault and battery require a
15 showing of malice, and because the complaint alleges that
16 defendants took steps to prevent the spread of dust,
17 defendants could not have also intended for the plaintiffs to
18 have been touched by the dust.  Defendants also argue that for
19 the battery claim, being touched by dust is not physical
20 contact.

21    Plaintiffs respond that Illinois law does not require
22 malice but merely requires that defendants acted willfully and
23 wantonly in causing the harmful contact.  Plaintiffs argue
24 that they have pleaded the necessary mental state to support
25 their assault and battery claims because the complaint alleges

1  that defendants acted deliberately in exposing the plaintiffs

2  to harmful substances and with blatant disregard for the

3  consequences of their action.

4          Plaintiffs have not pleaded sufficiently a claim for

5  assault and battery.

6          Beginning with battery:  Battery is an intentional

7  tort.  *Fiala v. Bickford Senior Living Group*, 2015 IL App (2d)

8  150067, paragraph 20.  "Battery is defined as the willful

9  touching of another person. ... The touching may be by the

10  aggressor or a substance or force put in motion by the

11  aggressor. ... An action for battery does not depend on the

12  hostile intent of the defendant but on the absence of the

13  plaintiff's consent of the contact. ...  To be liable for

14  battery, the defendant must have done some affirmative act

15  intended to cause an unpermitted contact." *Pechan v. DynaPro,*

16  *Inc.*, 251 Ill. App. 3d 1072, 1084 (1993).  "The element of

17  intent is defined in at least two ways:  Either an intent to

18  touch or an intent to harm or offend by the touch." *Fiala,*

19  2015 IL App (2d) 150067, paragraph 20.  "The gist of the

20  action for assault and battery is malice, which implies a

21  wrong inflicted on another with evil intent or purpose."

22  *Mitchell v. United States*, 2005 WL 2850113 at *2 (N.D. Ill.,

23  October 26, 2005).

24          Plaintiffs rely on a case from 1946, *Smith v.*

25  *Georgeoff,* 329 IL App. 444 (1946), to support the proposition

11:00:21

11:00:39

11:01:06

11:01:30

1    that, for a battery claim, "proof of express malice is

2    unnecessary and malice can be inferred from wanton and willful

3    or reckless disregard of the plaintiff's rights."  However,

4    *Smith* concerned a case in which a tavern owner violently threw

11:01:52   5    out a patron, and the patron sustained injuries.  *Id.* at 446.

6    The patron sued, alleging claims for assault and battery.  In

7    the trial court, defendant alleged a defense that a tavern

8    owner is permitted to throw out an inebriated patron, but lost

9    at trial and appealed.  *Id*.  The Illinois appellate court

11:02:12   10   determined that a tavern owner is allowed to throw out

11   inebriated patrons but may only use as much force as is

12   reasonably necessary to do so and held that the evidence in

13   this case indicated that more force was used than was

14   necessary.  *Id.*  The court stated:  "While it is true that

11:02:29   15   proof of acts negligently done will not sustain a charge of

16   assault and battery, the evidence in the instant case shows

17   conduct which is much stronger than a mere negligent attempt

18   to eject plaintiff.  Similarly, proof of express malice is

19   unnecessary, and malice can be inferred from wanton and

11:02:46   20   willful or reckless disregard the plaintiff's rights."  *Id.* at

21   447.

22          *Smith* reflects that the evidence in that case was

23   enough to support a judgment that the defendant did indeed

24   batter the plaintiff by using more force than necessary to

11:03:01   25   eject plaintiff from defendant's tavern.  Such a judgment

1    could be supported by proof that a defendant acted in wanton

2    and willful disregard for a plaintiff's rights.  But *Smith* did

3    not supplant the general rule that battery is an intentional

4    tort and requires that a defendant "must have done some

5    affirmative act, intended to cause an unpermitted contact."

6    *Mink v. University of Chicago*, 460 F. Supp. 713, 717 (N.D.

7    Ill. 1978); *Pechan,* 251 Ill. App. 3d at 1084.

8         On this point, Pechan is instructive.  There, a

9    plaintiff sued her ex-employer, alleging battery due to

10   injuries sustained from secondhand smoke.  251 Ill. App. 3d at

11   1074.  The defendant employer allowed employees to smoke at

12   its facility, and Illinois law permits claims against an

13   employer for intentional injuries where the employer

14   "expressly authorizes" the injurious activity.  *Id.* at 1084.

15        In determining whether plaintiff's battery claim was

16   properly dismissed for failure to state a claim, the appellate

17   court noted that "the cause of action for express

18   authorization to commit battery hinges on the intents of the

19   employee smokers.  We must decide whether the employees who

20   smoked did so with the intent that the emitted smoke touched

21   nonsmokers such as Pechan." *Id.*

22        The court ultimately deferred the dismissal of the

23   claim because "the act of smoking generally is not done with

24   the intent of touching others with emitted smoke.  Pechan has

25   not alleged that any of the office's smokers intended that she

11:03:20

11:03:45

11:04:08

11:04:25

11:04:46

1   be exposed to their smoke or that reasonable persons should

2   have known that their smoke would have contacted Pechan in

3   sufficient quantity to reasonably cause the damages claimed."

4   *Id.* at 1085 to 86.

11:05:01

5   In short, although plaintiffs' briefing argues

6   otherwise, battery in Illinois does require an allegation of

7   intent to cause offensive contact. *See also Censke v. United*

8   *States,* 27 F. Supp. 3d 920, 932 (N.D. Ill. 2014).

9   Here, plaintiffs have not pleaded intent, nor have

11:05:20  10  they pleaded factual content that would allow a reasonable

11   inference that defendants intended to cause offensive contact

12   when they undertook the demolition of the smokestack.

13   While the complaint alleges that the defendants did

14   not utilize adequate containment measures to prevent the dust

11:05:38  15  cloud from spreading, these allegations by themselves do not

16   give rise to a reasonable inference that defendants acted with

17   the intent of causing offensive bodily contact.  Moreover, the

18   complaint does not allege that defendants' failure to use

19   adequate containment measures occurred with the intent of

11:05:56  20  causing plaintiffs' offensive bodily contact.

21   The count for battery alleges:   "The manner in which

22   the demolition and disposal of the Crawford Coal Plant site

23   was conducted on April 11, 2020, released dust and other

24   particulate matter into the Little Village community.

11:06:19  25  Residents of Little Village, including the named plaintiffs

1   and class members, were forced to breathe the dust and

2   particulate matter.  This action, taken willfully by the

3   defendants in a manner described more fully throughout this

4   complaint, constituted contact by the defendants to which

5   plaintiffs did not consent."  Docket 13, paragraph 115.  And

6   so that language says "taken willfully".

7       The battery count does not allege that the defendants

8   undertook the demolition with the intent of causing harmful

9   bodily contact to plaintiffs.  Instead, it alleges that

10  defendants intentionally demolished the smokestack.  It is

11  true that under the federal pleading standards, no magic words

12  are necessary to state a claim, but here plaintiffs have

13  alleged, again, that defendants intentionally demolished the

14  smokestack, but have not alleged that defendants did so with

15  the actual intent of bringing about offensive bodily contact

16  with plaintiffs.  Plaintiffs' complaint stops short of

17  alleging that defendants undertook any of these actions with

18  the intent of causing plaintiffs offensive bodily contact.

19      Because plaintiffs have not pleaded intent, there is

20  no need to reach defendants' additional argument that contact

21  with the dust does not constitute contact for purposes of a

22  battery claim.

23      Turning to assault, "An assault can be defined as an

24  intentional, unlawful offer of corporal injury by force, or

25  force unlawfully directed, under such circumstances as to

11:06:34

11:06:52

11:07:12

11:07:29

11:07:44

1  create a well-founded fear of imminent peril, coupled with the

2  apparent present ability to effectuate the attempt if not

3  prevented." *Parrish v. Donahue*, 110 Ill. App. 3d, 1081, 1083

4  (1982).

11:08:02   5  For the same reasons plaintiffs have not alleged

6  intent in their battery claims, they also have not alleged the

7  required intent to plead an assault claim.

8  So Count VI, which alleges assault and battery, is

9  dismissed without prejudice in its entirety for all

11:08:16  10  plaintiffs.

11  Turning to trespass, which is Count V.  Defendants

12  argue that plaintiffs' trespass claim, whether based in

13  negligence or alleged as intentional tort, fails.  As for

14  intentional trespass, defendants contend that plaintiffs

11:08:29  15  failed to allege that defendants intended to send dust onto

16  plaintiffs' property.  And to the extent that the trespass

17  count alleges negligent trespass, defendants also urge

18  dismissal of the trespass count on the ground that it is

19  duplicative of plaintiffs' negligence claim.

20  Plaintiffs argue against dismissal of this count

21  because, according to plaintiffs, plaintiffs' theory of

22  intentional trespass is straightforward.  Plaintiffs allege

23  that defendants knew that their uncontrolled demolition would

24  cause harmful substances to invade plaintiffs' property,

11:09:01  25  proceeded with the demolition anyway, and thereby caused such

an invasion to occur. Plaintiffs argue that defendants knew with a high degree of certainty that their actions would lead to the intrusion of the property of Little Village residents, including plaintiffs.

Plaintiffs also assert that a claim for negligent trespass would not be duplicative of the negligence count because, in a negligent trespass action, the focus of the inquiry, according to plaintiffs, is on the foreseeability of the invasion onto the property. Plaintiffs contend that if such a negligent intrusion is shown, the plaintiff can recover for actual damages proximately caused by the ultimate intrusion, even if the chain of causation between the original negligent act and the downstream harm would be too attenuated in a generic negligence action.

The complaint here does not specify whether the claim for trespass sounds in negligence or intent. Illinois law recognizes a tort for intentional trespass and negligent trespass. *Dial v. City of O'Fallon*, 81 Ill.2d 548 (1980), said, "The conduct which today forms the basis of liability for the invasion of the interest in the exclusive possession of land may be of three general types: (1) conduct intended to cause an intrusion on the plaintiff's premises; (2) negligent conduct that causes an intrusion; and (3) conduct that is ultrahazardous and causes an intrusion, so that liability is said to be strict or absolute. The second type

1    of invasion listed above is now governed by the general

2    principles of negligence, and the third is thought of as

3    included in the principles governing extrahazardous conduct,

4    leaving only the first type of invasion wherein recovery may

11:10:49    5    be sought purely on the basis of the tort of trespass." *Dial,*

6    81 Ill.2d at 553.

7    Turning first to intentional trespass, "Trespass is

8    an intentional invasion of the exclusive possession and

9    physical position of land. ... One can be liable in trespass

11:11:07    10    for an intrusion by a thing or third person if he acts with

11    knowledge that his conduct will, to a substantial degree of

12    certainty, result in the intrusion. ...  In other words, a

13    person must know with a high degree of certainty that the

14    intrusion will naturally follow from his act before liability

11:11:26    15    for trespass attaches." *Freese v. Buoy*, 217 Ill. App. 3d,

16    234, 244 (1991).

17    Plaintiffs agree that intentional trespass under

18    Illinois law requires a high degree of certainty that an

19    intrusion of another's property will result from the act of

11:11:41    20    the defendant.   Docket 93 at pages 46 to 47.  Plaintiffs point

21    to paragraphs 91 to 93 of the complaint, which they contend

22    allege in no uncertain terms that defendants knew with a high

23    degree of certainty that their actions would lead to the

24    intrusion upon plaintiffs' property.

11:11:58    25    However, paragraphs 91 to 93 allege more generally

1   that the defendants knew or should have known that their

2   actions would have caused damage from the dust cloud.  Those

3   paragraphs do not contain allegations giving rise to a

4   plausible inference that defendants knew with a high degree of

11:12:14   5   certainty that their actions would have caused an intrusion

6   upon plaintiffs' property.

7         Moreover, the allegations in paragraphs 110 to 113

8   related to the trespass count generally allege:  (1) that

9   defendants' demolition and disposal caused the dust cloud that

11:12:32   10   invaded plaintiffs' property, paragraph 11; (2) that

11   defendants are aware that they caused the disposal and

12   invasion of the dust on plaintiffs' properties but have failed

13   to remove the dust, paragraph 112; and (3) that the discharge

14   of dust was unreasonable and unlawful and has interfered with

11:12:48   15   plaintiffs' use and enjoyment of their properties.

16   Paragraph 113.

17         However, even assuming all the facts alleged in the

18   complaint are true and taking all reasonable inferences in

19   plaintiffs' favor, the complaint falls short of alleging a

11:13:01   20   high degree of certainty on defendants' part that their

21   actions would have caused an intrusion upon plaintiffs'

22   property.

23         And so the trespass claim is dismissed without

24   prejudice for all plaintiffs to the extent that it alleges a

11:13:12   25   claim for intentional trespass.

1  Turning to negligent trespass, defendants urge

2  dismissal of plaintiffs' trespass claim to the extent it is

3  based in negligence as duplicative of plaintiffs' negligence

4  claim.

11:13:27

5  It is sometimes the case that courts will dismiss or

6  strike duplicative claims if they contain the same factual

7  allegations and the same injury.  *Meadoworks v. Linear Mold &*

8  *Engineering,* 2020 WL 419422 at \*2 (N.D. Ill. July 21, 2020).

9  However, it is unclear whether negligence and negligent

11:13:50

10 trespass are truly one and the same claim under Illinois law.

11  There is one case that suggests that negligent

12 trespass in Illinois is generally governed by the principles

13 of negligence, and that is the *Dial* case that I cited earlier,

14 so *Dial v. City of O'Fallon*, 81 Ill.2d 548, 553 (1980).

11:14:19

15  And *Dial* said, as I mentioned before, that the second

16 type of invasion listed above is now governed by the general

17 principles of negligence, and that -- that statement in *Dial*

18 is referring back to negligent conduct that causes an

19 intrusion.  So based on that language from *Dial*, there is some

11:14:49

20 argument that it's effectively the same claim, meaning

21 negligence and negligent trespass are effectively the same

22 claim.

23  On the other hand, when you continue reading in *Dial*

24 to the next paragraph, *Dial* turns to the Restatement Second of

11:15:09

25 Torts, and it cites the Restatement Second of Torts

1   Section 165 for the point that one is liable for negligent or

2   reckless intrusion on land if he thereby causes harm to a

3   legally protected interest, and the Restatement Section 165

4   that *Dial* cites is a portion of the Restatement that addresses

11:15:43   5   liability for intrusions resulting from reckless or negligent

6   conduct and abnormally dangerous activities.  So it's a

7   portion of the Restatement that specifically focuses on

8   trespass type -- or on intrusions, so it's just not clear from

9   *Dial* whether, on the one hand, *Dial* was saying that negligent

11:16:13   10   trespass is subsumed into negligence generally, or whether

11   *Dial* was saying that negligent trespass claims continue to be

12   governed by this Restatement, Section 165, which looks to be

13   geared particularly to intrusions, in other words, trespasses,

14   not negligence generally.

11:16:34   15          So *Dial* itself is not entirely clear on this, and

16   defendants have cited no Illinois case law holding that a

17   plaintiff cannot, as a matter of law, plead both a negligence

18   claim and a negligent trespass claim.  It is defendants'

19   burden to establish that they are entitled to the relief that

11:16:54   20   they are requesting, meaning dismissal of the negligent

21   trespass count as duplicative of negligence, and defendants

22   have not carried this burden here.

23          Accordingly, this claim will not be dismissed or

24   stricken with respect to any plaintiff.  All plaintiffs have

11:17:08   25   alleged that they own property in Little Village and that the

1   dust accumulated in their neighborhoods.  Jose Solis

2   specifically alleges that the dust invaded his property.

3   These allegations are sufficient to infer that -- or to state

4   a plausible claim that defendants' negligent conduct caused an

11:17:26   5   invasion of the plaintiffs' property.

6          Now, if the claims are ultimately seeking -- are

7   presenting different theories of relief for the same damages,

8   then, of course, there cannot be a double recovery based on

9   multiple theories of relief, but that is not an issue that I

11:17:47   10  need to address at this point.

11         So the motion to dismiss is denied with respect to

12  Count V, trespass, to the extent that that claim sounds in

13  negligence.

14         Turning to private nuisance, which is Count IV,

11:18:02   15  defendants argue for dismissal of plaintiffs' private nuisance

16  because (1) plaintiffs have alleged only *de minimis* injuries

17  from the dust and not a substantial invasion of their

18  properties, according to defendants; (2) again, according to

19  defendants, plaintiffs did not allege that defendants

11:18:16   20  intentionally sought to disturb their enjoyment of their

21  properties; (3) any private nuisance claim based on negligence

22  is duplicative of plaintiffs' negligence claim; and (4)

23  defendants' actions were reasonable.

24         Plaintiffs respond that they are misapplying federal

11:18:32   25  notice pleading standards, that plaintiffs have pleaded

1  adequate damages to their property, and that they have pleaded
2  a private nuisance claim based on both negligence and intent.

3       Plaintiffs may proceed on a negligent private
4  nuisance claim.

11:18:46

5       "A private nuisance is a substantial invasion of
6  another's interest in the use and enjoyment of his or her
7  land. ... The invasion must be either intentional or negligent
8  and unreasonable. ... In determining whether particular
9  conduct constitutes a nuisance, the standard is the conduct's

11:19:01

10 effect on a reasonable person. ... The Illinois Supreme Court
11 has frequently stated that a nuisance must be physically
12 offensive to the senses to the extent that it makes life
13 uncomfortable. ...  An invasion constituting a nuisance can
14 include noise, smoke, vibration, dust, fumes, and odors

11:19:18

15 produced on the defendants' land and impairing the use and
16 enjoyment of neighboring land. ...  Whether the complained-of
17 activity constitutes a nuisance is generally a question of
18 fact.  *Dobbs v. Wiggins,* 401 Ill. App. 3d 367, 375 to 76
19 (2010).

11:19:31

20       A claim for negligent private nuisance is not
21 duplicative of a negligence claim.  The elements of a private
22 nuisance claim are slightly different from a general
23 negligence claim because a private nuisance claim requires
24 that an intrusion not only be undertaken negligently, but also

11:19:51

25 must be physically offensive to a reasonable person.

1      Furthermore, defendants complain or argue that

2  plaintiffs have alleged only *de minimis* injuries.  While it is

3  true that a private nuisance claim requires a substantial

4  invasion of property, this is a question for the trier of

11:20:07      5  fact.  Defendants specifically rely on *In re Chicago Flood*

6  *Litigation*, 176 Ill.2d 179, 203 (1997), which stated that "the

7  conclusory allegation of unspecified property damage is

8  insufficient to show that their damages are recoverable in

9  tort and cannot withstand a motion to dismiss."  However, it

11:20:30     10  is not clear that that court made the statement with respect

11  to the substantial invasion element of private nuisance.

12  Moreover, Illinois requires fact pleading, which is a more

13  rigorous standard than federal notice pleading.

14      Similarly, whether defendants' demolition of the

11:20:47     15  smokestack was reasonable is a question of fact that's not

16  appropriate for disposition at the pleading stage.

17  Defendants' reliance on *Great American* 2015 IL App (1st)

18  133376, is not persuasive because that case did not concern a

19  private nuisance claim.

11:21:04     20      As to a claim for intentional private nuisance, for

21  the same reasons that plaintiffs' trespass, battery, and

22  assault claims did not plead intent, their private nuisance

23  does not plead intent either.  There are no allegations in the

24  complaint suggesting that defendants acted with the intent of

11:21:22     25  disturbing plaintiffs' enjoyment of their properties.

1    The claim for private nuisance, Count IV, thus

2  survives for all plaintiffs, and the motion to dismiss that

3  count is denied.

4    Turning to Title VI, which is Count VIII.  Defendants

11:21:41  5  contend that plaintiffs' Title VI claim must be dismissed

6  because, according to defendants, (1) plaintiffs have failed

7  to plead intentional discrimination, and (2) plaintiffs,

8  again, according to defendants, have failed to allege that

9  defendants received federal funding.

11:22:00  10    Title VI provides that "no person in the United

11  States shall, on the ground of race, color, or national

12  origin, be excluded from participation in, be denied the

13  benefits of, or be subject to discrimination under any program

14  or activity receiving federal financial assistance."  And that

11:22:20  15  is a quotation from 42 U.S.C. Section 2000d.

16    Title VI prohibits intentional discrimination.

17  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  "To state a

18  claim under Title VI, plaintiffs must allege facts satisfying

19  two elements:  (1) that they have been intentionally

11:22:44  20  discriminated against on the grounds of race; and (2) that

21  defendants are recipients of federal financial assistance."

22  *Khan v. Midwestern University,* 147 F.Supp.3d 718, 720 (N.D.

23  Ill. 2015).

24    Taking all the allegations of the complaint as true,

11:23:00  25  plaintiffs' allegations are not sufficient to draw a

1    reasonable inference that defendants intentionally

2    discriminated against plaintiffs.  While defendants'

3    conduct -- or I'm sorry.  The Rule 12(b)(6) plausibility

4    inquiry is context specific.  "It is rarely proper to draw

11:23:19    5    analogies between complaints alleging different sorts of

6    claims; the type of facts that must be alleged depend on the

7    legal contours of the claim."  *EEOC v. Concentra Health*

8    *Services*, 496 F.3d 773, 782 (7th Cir. 2007).

9    While defendants' conduct might have been negligent,

11:23:37    10    the complaint does not plausibly allege any type of intent on

11    defendants' part to intentionally discriminate against

12    plaintiffs.

13    The complaint lacks factual allegations giving rise

14    to a plausible inference that defendants intentionally

11:23:54    15    discriminated against plaintiffs in demolishing the

16    smokestack.  The complaint alleges that defendants had

17    knowledge that the Little Village has suffered historic

18    environmental wrongs, a tragic and unfortunate circumstance,

19    and the complaint alleges that the defendants were negligent

20    in the demolition.

21    Nonetheless, the complaint does not plausibly allege

22    that defendants undertook the demolition with the intent of

23    discriminating against plaintiffs.

24    Because plaintiffs have not adequately pleaded a

11:24:25    25    Title VI claim on the issue of intent, there is no need to

1   reach the question of whether plaintiffs have sufficiently

2   pleaded that defendants were recipients of federal funding.  I

3   would, however, note that I did see another case dismissing a

4   Title VI claim on this basis for conclusory allegations on

11:24:52   5   this point, which the sole allegation in this case on that

6   point seems quite similar to the allegation in that case just

7   in that both allegations were upon information and belief.

8   And that case is *Shebley v. United Continental Holdings*, 2020

9   WL 2836796 at *5.

11:25:26   10   And so Count VI -- or, I'm sorry -- Count VIII is

11   dismissed without prejudice for all plaintiffs.

12   And to summarize then, and I gave a similar summary

13   towards the beginning, but I'll just attempt to summarize

14   again and to wrap up.

11:25:53   15   So the motion, which is Docket 75, is granted in part

16   and denied in part.  Counts I, ultrahazardous activity; II,

17   negligence; and IV, private nuisance, may proceed.

18   Count V, trespass, is dismissed without prejudice to

19   the extent it sounds in intentional trespass, but the claim

11:26:15   20   may go forward as a negligent trespass claim.

21   Count VI, for assault and battery; VII, medical

22   monitoring; and VIII, Title VI, are dismissed without

23   prejudice in their entirety for all plaintiffs.

24   Count III, negligent infliction of emotional

11:26:31   25   distress, is dismissed without prejudice as to plaintiffs Jose

1  Solis and Juan Rangel but survives for plaintiff Antonio
2  Solis.

3  Going forward then are the following claims:  I,
4  ultrahazardous -- I'm sorry.  For plaintiff Antonio Solis:  I,
5  ultrahazardous activity; II, negligence; III, negligent
6  infliction of emotional distress; IV, private nuisance; V,
7  trespass in negligence.

8  For Jose Solis:  I, ultrahazardous activity; II,
9  negligence; IV, private nuisance; V, negligent trespass.

10  For Juan Rangel:  I, ultrahazardous activity; II,
11  negligence; IV, private nuisance; V, negligent trespass.

12  Again, all dismissals are without prejudice.
13  Plaintiffs are given an opportunity to amend the complaint if
14  they would like to do so.

15  The referral to Judge Harjani is expanded to include
16  setting a deadline for amended pleadings.  Again, I'll direct
17  the parties to exhaust settlement possibilities in light of
18  this ruling.

19  And I will direct the parties to submit a joint
20  status report on the status of the case generally, including
21  settlement efforts, by six weeks from today, which is May 4th.

22  And that concludes the ruling today.  Thank you,
23  everyone, for your time and for your participation.  Take
24  care.

25  MR. RAUSCHER:  Thank you, your Honor.

11:26:50
11:27:17
11:27:36
11:27:51
11:28:15

1    MR. RYAN:  Thank you, your Honor.

2        MR. DEVRIES:  Thank you.

3        MR. LYMAN:  Thank you.

4      (Which were all the proceedings heard.)

5                    CERTIFICATE

6      I certify that the foregoing is a correct transcript from

7    the record of proceedings in the above-entitled matter.

8    */s/Kathleen M. Fennell*          *March 30, 2022*

9    Kathleen M. Fennell                    Date
     Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT B