**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTONIO SOLIS et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:20-cv-02348 |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| HILCO REDEVELOPMENT LLC et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL**

**Table of Contents**

I.    INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 2

III.   TERMS OF THE SETTLEMENT ..................................................................... 4

   A.  Class Definition ................................................................................................ 4

   B.  Monetary Relief and Claims Administration ............................................... 5

IV.  LEGAL STANDARD FOR FINAL APPROVAL ............................................ 7

   A.  The Court should certify the settlement classes. ......................................... 7

   B.  The implemented notice plan comports with due process. ........................... 9

   C.  The proposed settlement should be approved because it is fair, reasonable, and adequate. ................................................................................................... 11

   1.  The strength of Plaintiffs' case compared to the amount of the settlement offer favors approval. .................................................................................... 12

   2.  The potential length, complexity, and expense of further litigation favor approval. 15

   3.  The lack of opposition to the settlement weighs in favor of final approval. .............. 15

   4.  The opinion of competent counsel supports final approval. ........................................ 16

   5.  The stage of the proceedings and the amount of discovery completed support final approval. ................................................................................................................ 17

   6.  The settlement is not a product of collusion, and there are no "red flags." ............... 18

V.    CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................................................................................ *passim*

*Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773 (7th Cir. 2021) ............................................8

*Bell v. PNC Bank, Nat. Assn.*, 800 F.3d 360 (7th Cir. 2015) ........................................................9

*Birchmeier v. Caribbean Cruise Line, Inc.* , 302 F.R.D. 240 (N.D.Ill.2014)....................................17

*Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985) ................................................................................9

*Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399 (N.D. Ill. July 12, 2011)...........................18

*CE Design Ltd. v. Franklin Edison Corp.*, 2022 IL App (2d) 190130-U (Ill. Ct. App. 2022) ......16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................................9

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).........................................................12,18,19

*Flood v. Dominguez*, Case No. 08-cv-153 (N.D. Ind. 2010) ........................................................17

*Freeman v. Grain Processing Corp*, 895 N.W.2d 105 (Iowa 2017) ............................................14

*Gates v. Rohm And Haas Co.*, CIV.A.06-1743, 2008 WL 4078456 (E.D. Pa. Aug. 22, 2008) ....14

*Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013) ...........................................9

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011)................................................................................................ *passim*

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...............................16

*In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ................................................................................................................................13

*In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022)....................7,9

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ................................................................................13,16

*McKinnie v. JP Morgan Chase Bank*, 678 F.Supp.2d 806 (E.D. Wis.2009)................................18

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ........................................................ 14

*Rogers v. BNSF*, 19 C 3083, 2022 WL 787955 (N.D. Ill. 2022) ................................................. 17

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)...........................................9,15

*Sutton v. Hoffman-La Roche Inc.*, 2020 WL 2745404 (N.J. Super. Ct. App. Div. May 27, 2020) ................................................................................14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).................. *passim*

*Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) .............. 17

**Federal Rules**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

I.      **INTRODUCTION**

Four years after the Defendants demolished a 300-foot smokestack that resulted in the pollution of and damage to the Little Village neighborhood and its residents, the parties' settlement should bring this litigation to a close. After largely defeating a motion to dismiss and aggressively litigating this case through discovery, Plaintiffs achieved a $12,250,000 settlement (the "Settlement") that provides a meaningful monetary recovery to thousands of class members who submitted valid claim forms.

After the Court preliminarily approved the settlement, the Settlement Administrator carried out a robust, court-approved notice process. In this case, the direct and publication notice process was supplemented with significant additional support, including: coverage on major local television stations and print media; support by the local alderman's office to help constituents file claims, including through a training session staffed by Class Counsel (among others) to help community leaders assist class members in filling out claim forms; and announcements made during mass services at a well-attended local church, in addition to a formal claims filing event organized by named plaintiff Juan Rangel and held at that same church.

All of the above efforts were undertaken to ensure that community members had as much information as possible to evaluate the settlement. Those efforts were successful, and the response was overwhelmingly positive: more than 21,000 valid claims were filed, which represents a claims rate in the range of 20% to nearly 30% of the estimated Class size. By contrast, no one objected, the one Class Member who had made certain objections at the outset of the case voluntarily withdrew those objections, and only 13 people excluded themselves from

the settlement.[1]

The Settlement Agreement, a copy of which is attached as Exhibit A, provides meaningful relief to Class Members who filed a valid claim. That, combined with the lack of any objections and the limited number of opt outs, shows that the Settlement should be viewed as fair, adequate, and reasonable. Plaintiffs respectfully request that the Court enter an Order (i) granting final approval of the Class Settlement; and (ii) approving the request for incentive awards, attorney's fees, and expenses.

## II.    BACKGROUND

The Court described the facts alleged in this case in its March 23, 2022 motion to dismiss ruling. Dkt. 170 (Transcript of March 23, 2022 Hearing, *Solis et al. v. Hilco et al.,* Case No. 20-2348 (N.D. Ill. Mar. 23, 2022)). Plaintiffs claim that the Defendants blew up a smokestack at the Crawford Coal Power Plant in the Little Village neighborhood of Chicago on Easter weekend in April 2020, at the start of the COVID-19 pandemic, emitting a plume of debris and particulate matter across the neighborhood. The plume consumed the Little Village neighborhood without warning, settling on people and across the property of the Little Village community. Plaintiffs further alleged that Defendants conducted their demolition in violation of the rules, regulations, and customs governing the safe demolition and disposal of industrial sites. The plume caused the residents of Little Village difficulty breathing. Additionally, it coated real estate and personal property throughout the neighborhood.

The Court largely denied the Defendants' motions to dismiss. *See generally* Dkt. 170. Plaintiffs' claims for negligence and nuisance, as well as a strict liability claim for conducting an

---

[1] As discussed below, there were also hundreds of thousands of claims filed by people who were not eligible. The Claims Administrator has undertaken significant efforts to filter out the invalid claims to ensure that only eligible class members receive payment from this settlement.

ultrahazardous activity, were being litigated when the parties reached a settlement. In Plaintiffs'
view, discovery substantiated their allegations. For example, as noted above, Plaintiffs were
allowed to proceed on their ultrahazardous activity claim, meaning that they have a strict liability
claim alleging that Defendants could not have conducted the demolition without causing the
damage that Plaintiffs allege they caused. During discovery, testimony confirmed that this large
dust cloud was the expected result of Defendants' actions. *See* Ex. B (Deposition of Ray
Zukowski) at 133:6-13.

Plaintiffs' retained consulting experts, who have not been disclosed in the litigation,
examined the content of the dust cloud that resulted from the demolition, its concentration as it
travelled through the air, and the area in which it dispersed. Two of their conclusions are relevant
here. First, testing of samples from the site revealed that it is unlikely that the dust cloud
contained contaminants of concern at levels that would negatively affect the health and
wellbeing of residents in the short or long term. This is consistent with publicly available results
from the substantial testing that government agencies conducted after the implosion. *See* Ex. C
(City of Chicago summary of test results).[2] Second, the population and property affected
centrally impacted by Defendants' implosion and dust cloud were in the area extending from
33rd St. and Kedzie Avenue, west to 33rd St. and Kilbourn Avenue, north to Kilbourn Avenue
and Cermak Road, east to Cermak Road and Ogden Avenue, northeast to Ogden Avenue and
California Avenue, south to 26th St. and California Avenue, west to 26th St. and Sacramento
Avenue, south to Sacramento Avenue and 31st St., west to 31st St. and Kedzie Avenue, south to
33rd St. & Kedzie Avenue.

The parties engaged in settlement negotiations several times during the litigation. After

---

[2] Available at https://www.chicago.gov/city/en/sites/hilco/home/community-information.html.

the parties were unable to make significant progress toward settlement on their own, the parties

engaged in mediation with the Honorable Wayne Andersen, and both sides accepted his

mediator's proposal, resulting in the Settlement now before the Court.

## III.    TERMS OF THE SETTLEMENT

The terms of the Settlement are summarized below and set forth in full in Exhibit A.

### A.    Class Definition

The class and class members defined in the Settlement and preliminarily approved by the

Court consists of two classes—one for individuals whose property received particulate matter

from the plume (the "Property Class"), and another for individuals present in the area containing

particulate matter from the plume (the "Personal Injury Class")—defined, respectively, as

follows:

> **Property Class:** All persons, property owners, lessees and businesses whose
> property received particulate matter from the Demolition and disposal of the
> smokestack at the Crawford Coal Plant and was located in the geographic area from
> 33rd St. and Kedzie Avenue, west to 33rd St. and Kilbourn Avenue, north to
> Kilbourn Avenue and Cermak Road, east to Cermak Road and Ogden Avenue,
> northeast to Ogden Avenue and California Avenue, south to 26th St. and California
> Avenue, west to 26th St. and Sacramento Avenue, south to Sacramento Avenue and
> 31st St., west to 31st St. and Kedzie Avenue, south to 33rd St. & Kedzie Avenue
> (the "Property Class"); and/or

> **Personal Injury Class**: All persons present in the geographic area from 33rd St.
> and Kedzie Avenue, west to 33rd St. and Kilbourn Avenue, north to Kilbourn
> Avenue and Cermak Road, east to Cermak Road and Ogden Avenue, northeast to
> Ogden Avenue and California Avenue, south to 26th St. and California Avenue,
> west to 26th St. and Sacramento Avenue, south to Sacramento Avenue and 31st St.,
> west to 31st St. and Kedzie Avenue, south to 33rd St. & Kedzie Avenue during the
> Demolition (the "Personal Injury Class").

Ex. A § 1.7; *see also* Dkt. 252 ¶ 2.

The Court presiding over this action and their family members, Defendants, people who

properly opt out of the class pursuant to Federal Rule of Civil Procedure 23(e)(4), and counsel

and their families are excluded. *Id.* These exclusions are standard in class action settlement

agreements and do not materially change the class definition.

**B.  Monetary Relief and Claims Administration**

The parties have agreed to settle the litigation in exchange for a gross common fund of $12,250,000, from which all class members will be paid, along with class counsel's fee award, incentive payments, and administration expenses. Ex. A §§ 1.18, 2.1.

The Agreement provides that a net fund up to $1,000,000 is allocated to the Property Class; it estimates that the a remaining net fund of approximately $7,000,000 will be available the Personal Injury Class if the Court grants Plaintiffs' request for attorney's fees and expenses; and it provides that any of the $1,000,000 in funds allocated the Property Class that is not needed to satisfy the claims of members of the Property Class will be distributed on a *pro rata* basis to members of the Personal Injury Class. Ex. A § 3.1.

In line with the Settlement, Simpluris has been working hard to calculate individual award amounts now that the Claims Deadline has passed. Ex. A § 9.

As described in more detail in the declaration of Jacob Kaminer, the process of analyzing Class Members' claims and determining the value of those claims has been more complicated than expected because there were hundreds of thousands more claims than there are potential class members. Specifically, the estimated population of the Little Village neighborhood, where the implosion occurred, is between 70,000 – 100,000 people. Ex. D (Kaminer Decl.) ¶ 22(d)(i). Although the Class Boundaries do not exactly mirror the Little Village neighborhood, the population estimate provides a reasonable estimate of potential legitimate claims. Thus, it was clear when more than 600,000 claims were filed that many of those claims were not valid.

Simpluris has worked hard to determine which claims are valid so that valid claims are not diluted by fraudulent or otherwise invalid claims. Simpluris' analysis of the claims has resulted in a determination that 21,626 claims should be approved as valid. Ex. D (Kaminer Decl.) ¶ 22.  If the

full $1,000,000 allocated to property damage claims is used to satisfy those claims and if the Court

grants Plaintiffs' motion for attorney's fees, incentive awards, and expenses, each Class Member

who submitted a valid personal injury claim will receive approximately $316.79. Ex. D (Kaminer

Decl.) ¶ 30.

The Settlement provides for Simpluris to send out individual settlement payments to Class

Members within 60 days of the Effective Date of the Settlement. Ex. A ¶ 3.3. With the claims

analysis substantially complete, Simpluris is in a position to meet that deadline. Ex. D (Kaminer

Decl.) ¶ 31. Finally, any funds from uncashed checks from either Property or Personal Injury Class

members shall be redistributed to Property or Personal Injury Class members in a second round of

payments on a *pro rata* basis, if such distribution is practicable, or to *cy pres* selected by Plaintiffs

and class counsel and approved by the Court if a distribution is not practicable. Ex. A § 3.5.

Plaintiffs will seek Court approval before asking Simpluris to make a *cy pres* distribution.

### C.     Incentive Awards and Attorneys' Fees

The Agreement calls for incentive awards in the amount of $5,000 to each of the three

named Plaintiffs. Ex. A § 4.3. In addition, Plaintiffs' and class counsel have voluntarily agreed to

limit their request for attorneys' fees to one-third of the fund value, after administrative

expenses, litigation expenses, and incentive awards are deducted. Ex. A § 4.1.

Class Counsel filed motion for incentive awards, attorney's fees, and expenses on

February 9, 2024. Dkt. 255. Since then, Class Counsel has continued to devote significant efforts

to this case, participating in community events to answer questions and help class members file

claims, and working with the Settlement Administrator to carry about the settlement. Ex. E

(April 15, 2024 Declaration of Scott Rauscher) ¶ 4. In addition, Plaintiff Juan Rangel has

continued to go above and beyond in his efforts to communicate with community members about

6

the settlement. In particular, Mr. Rangel organized an official claims-filing event at a popular local church. Ex. E (April 11, 2024 Declaration of Scott Rauscher) ¶ 4-5. The event was staffed by members of Class Counsel's law firm, the Settlement Administrator, certified translators, and volunteers from the community. Ex. E (April 11, 2024 Declaration of Scott Rauscher) ¶ 4. Mr. Rangel also personally participated in the event. Ex. E (April 11, 2024 Declaration of Scott Rauscher) ¶ 5.

> **D.** **Release of Liability**

In exchange for the monetary and prospective relief described above, each settlement class member will be deemed to have released and forever discharged Defendants and all of their related subsidiaries and affiliates from any past present and future claims related to the April 11, 2020 implosion of the smokestack at the Crawford Coal Plant. Ex. A §§ 1.9, 5.1.

## IV. LEGAL STANDARD FOR FINAL APPROVAL

"A court may approve a class action settlement if: (1) it is able to certify the settlement class; (2) the class was provided adequate notice and a public hearing; and (3) it determines that the settlement is "fair, reasonable, and adequate." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022) (internal quotation omitted).

> **A.** **The Court should certify the settlement classes.**

Certification of the settlement classes is appropriate under Federal Rule of Civil Procedure 23(b)(3). To certify a class under that subsection, Plaintiffs must "show that: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Id*. at 922, quoting Fed. R. Civ. P. 23(a). Plaintiffs must further "show that 'the questions of law or fact common to the class members predominate over

any questions affecting only individual members, and that 'a class action is superior over other available methods for fairly and efficiently adjudicating the controversy.'" *Id.*, quoting Fed. R. Civ. P. 23(b)(3). The Settlement Classes satisfy all of these factors.

First, there are tens of thousands of Class Members, which easily satisfies the numerosity standard. *See, e.g.*, *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (noting that 40 class members is typically enough to satisfy numerosity). Similarly, there are numerous questions of fact and law that are common to the Class Members. For example, Plaintiffs allege that the Defendants are strictly liable for the damage that they caused engaging in an ultrahazardous demolition, and they further allege that Defendants fell below the relevant standard of care and were therefore negligent in carrying out the demolition. *See, e.g.*, Dkt. 13 ¶ 78. The answer to each of those questions would be the same for each Class Member, as they turn solely on Defendants' actions.

The claims of the Named Plaintiffs are identical to other Class Members. Each Named Plaintiff was a resident of Little Village at the time of the implosion, and each had property in the neighborhood. Dkt. 13 ¶¶ 10-12. Moreover, the Named Plaintiffs and Class Counsel have adequately represented the Class. Each of the Named Plaintiffs has participated in and represented the Class Members in the litigation. Dkt. 255 at 13. In addition, Class Counsel has significant class action and complex litigation experience, has devoted substantial resources to this case, and overall has more than adequately represented the Class. *See generally* Dkt. 255; *see also* Dkt. 255-1(Declaration in Support of Plaintiffs' Fee Petition).

Finally, common issues predominate, and a class action is the superior method for resolving the issues in this case. Common issues predominate because the answers to the central questions in this case, *e.g.*, whether Defendants are strictly liable for ultrahazardous activity

and/or whether Defendants were negligent in carrying out the demolition, will be the same for all

Class Member. *See Bell v. PNC Bank, Nat. Assn.*, 800 F.3d 360, 378 (7th Cir. 2015) ("a common

question predominates over individual claims if a failure of proof on the common question would

end the case and the whole class will prevail or fail in unison) (internal quotation marks omitted).

Superiority is also satisfied. "Individual class members would likely have little interest in

prosecuting a" lawsuit against the Defendants relating to the implosion given, among other

things, uncertainties about proving damages. *See, e.g.*, *In re TikTok, Inc., Consumer Privacy

Litig.*, 617 F. Supp. 3d at 927. Thus, a class action is the only reasonable way to ensure that any

significant number of people who were affected by the implosion have an opportunity to seek

redress. That is not just supposition. Only a handful of individual cases were filed relating to this

demolition, Dkt. 255-1 ¶ 70, and only 13 individuals excluded themselves from the Settlement.

### B.    The implemented notice plan comports with due process.

Before approving the Settlement, the Court must consider whether the notice provided to

the Settlement Class is "the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Fed. R. Civ.

P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth

Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not

require receipt of actual notice by all class members in order to comport with both Rule 23 and

the requirements of due process, but it often includes direct notice to individuals who can be

identified by regular mail. *See Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that

"Rule 23 does not require defendants to exhaust every conceivable method of identification").

Class members who cannot be identified through reasonable effort may be notified by

publication. *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013).

At the Preliminary Approval stage, the Court held that the proposed Notice Plan

consisting of direct and published notice was the best practicable notice available. Dkt. 252 ¶ 7.
Following Preliminary Approval, Settlement Administrator Simpluris Inc. carried out that Notice
Plan. Namely, direct notice was provided by mail to every class member who could be identified
through reasonable effort, a process that was supplemented by published notice.

As far as direct notice, Simpluris mailed 91,800 postcard notices with Claim Forms to
potential Class Members. Ex. D (Kamenir Decl.) ¶¶ 8-11.[3] In addition, 30,000 door hangers were
delivered to addresses throughout the Class Boundaries. Ex. D (Kamenir Decl.) ¶ 14-15.
Publication notice was carried out in various forms. Print Notice was placed in English in the
Chicago Tribune and in Spanish in La Raza on January 11, 2024. Ex. D (Kamenir Decl.) ¶ 16(b).
A press release was issued that same day. *Id*. In addition, online ads were placed and have
garnered more than 440,000 views. Ex. D (Kamenir Decl.) ¶ 16(c). The Settlement has also
received press coverage on major local publications and television stations, furthering the reach
of publication notice. (*See, e.g.*, "Hilco to Pay $12.25M Over Botched Smokestack Implosion in
Little Village. Here's How to File a Claim," WTTW News (Jan. 18, 2024);[4] Maher Kawash,
"Company that botched Little Village smokestack demo will pay over $12M, court docs say,"
ABC News (Jan. 17, 2024).[5]

Finally, the required notice was sent to the Attorney General of the United States as well
as the Attorneys General of all 50 states, the District of Columbia, Puerto Rico, Guam, the
Northern Mariana Islands, the U.S. Virgin Islands, and American Samoa. Ex. D (Kamenir Decl.)

---

[3]     As of April 12, 2024, 14,539 of the postcards were returned as undeliverable. Simpluris was able
to find updated contact information for 6,698 of those notices. Ex. D (Kaminer Decl.) ¶ 12.

[4]     Available at https://news.wttw.com/2024/01/18/hilco-pay-1225m-over-botched-smokestack-
implosion-little-village-here-s-how-file-claim.

[5]     Available at https://abc7chicago.com/little-village-chicago-hilco-news-settlement/14332559/,
including a broadcast version of the story.

¶ 4.

The notices directed Class Members to the Settlement Website—

www.littlevillagesmokestack.com—which included the Notice, important Court documents

(such as the Settlement Agreement), and the option to download a Claim Form or to submit a

Claim Form online. Ex. D (Kamenir Decl.) ¶ 16. As of April 10, 2024, there were 1,317,784 total

views and 699,372 unique visitors to the Settlement Website. *Id*. Simpluris also maintained email

and telephone support where class members could ask questions or request additional

information. (*Id.* ¶¶ 18-19).

Finally, Plaintiff Juan Rangel, Class Counsel, and the Settlement Administrator

participated in additional efforts to ensure that Class Members had notice of the Settlement. In

particular, Class Counsel participated in the following events: (1) an in-person training session

organized by the local alderman's office where volunteers from the community received

information on the claims-filing process so that they could help other community members file

claims; (2) two remote video town halls organized by the Little Village Environmental Justice

Organization, a group dedicated to advocating for environmental justice in Little Village;[6] and

(3) an in-person claims filing event organized by Juan Rangel and staffed by Class Counsel, the

Settlement Administrator, and certified translators, during which hundreds of individuals filed

claims. Ex. E (Rauscher Decl.)  ¶ 4; Ex. D (Kamenir Decl.) ¶ 17.

In short, the notice by postcard and publication, supplemented by the additional efforts of

Class Counsel and Mr. Rangel, meet the requirements of due process and Rule 23.

### C. The proposed settlement should be approved because it is fair, reasonable, and adequate.

Rule 23(e) requires judicial approval of a proposed class action settlement based on a

---

[6]     http://www.lvejo.org/our-mission/mission-vision-statement/.

finding that the agreement is "fair, reasonable, and adequate." *See* FED. R. CIV. P. 23(e)(2);

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

The Seventh Circuit has identified five factors for district courts to consider in determining whether to approve a class action settlement: (i) the strength of a plaintiff's case compared to the amount of the defendant's settlement offer; (ii) an assessment of the likely complexity, length and expense of the litigation; (iii) an evaluation of the amount of opposition to the settlement among affected parties; (iv) the opinion of competent counsel; and (v) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citation and internal quotations omitted); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (hereinafter "*In re AT&T II*"). Courts should also consider whether the settlement is the product of collusion, or whether there are any "red flags" present in the settlement that would suggest it is unfair to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 723-29 (7th Cir. 2014).All factors weigh in favor of approving the Settlement in this case.

### 1. The strength of Plaintiffs' case compared to the amount of the settlement offer favors approval.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653) (internal

quotations omitted); *see also Eubank.*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal quotations omitted).

"In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1200) (internal quotations omitted). In terms of tangible monetary relief, the proposed Settlement warrants approval, and that is true both when compared to other similar environmental class actions, and when viewed in light of the risks of a jury trial and potential appeals.

This factor weighs strongly in favor of approval. Plaintiffs were in a strong position heading into discovery, given the effect of Defendants' demolition and its impact on the neighborhood. Since the incident, Defendant Hilco's own public comments about the events underlying the lawsuit and independent investigations have established strong evidence in support of Defendants' liability on Plaintiffs' claims. Moreover, as discussed above, discovery confirmed that Plaintiffs had a strong case on liability. *Supra* at 2-3.

Nevertheless, victory at trial would not have been certain by any means. Of most concern is what damages the Defendants will ultimately be liable for. Investigation did not reveal substantial damages claims suffered by Class Members. A jury could award significantly less in

damages than the Settlement provides. Given the damages suffered by Class members, the recovery in this case is more than fair and reasonable. *See*, *e.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009) (affirming approval of $4.45 million settlement in case alleging that for years a steel "mill wrongfully discharged harmful 'metal-like dust and flakes' that settle on their real and personal property, with recovery limited to $300 per household, which stands in contrast to the $317 *per claimant* recovery in this case, not limited to a single recovery per household); *see also Gates v. Rohm And Haas Co.*, CIV.A.06-1743, 2008 WL 4078456, at *1 (E.D. Pa. Aug. 22, 2008) (approving settlement that provided *up to* $2 million in class action alleging that defendant polluted ground water for more than 30 years, with recovery limited to maximum of $1,400 reimbursement of MRI or other screening test for personal injury rather than a cash payment, and maximum $1,000 for property damage). Fortunately, the one-time smokestack demolition did not cause serious, long-term damages. The settlement thus compares favorably to other settlements in environmental class actions, such as those cited in this paragraph.

Moreover, the putative class inherently faced a risk with respect to certification of a personal-injury damages class, although there is precedent for certifying similar classes in environmental cases. *See*, *e.g.*, *Freeman v. Grain Processing Corp*, 895 N.W.2d 105 (Iowa 2017) (affirming class certification for liability and property damage in environmental nuisance case, and collecting cases for proposition that environmental nuisance cases are routinely certified); *Sutton v. Hoffman-La Roche Inc.*, 2020 WL 2745404 (N.J. Super. Ct. App. Div. May 27, 2020) (noting that expert testimony in environmental class action may be used to determine class-wide damages and further stating that individualized damages are common in certified class actions). In addition, if a jury were to find that Defendants were not liable for the claims for the personal-

injury damages class—a point on which Plaintiffs bear the burden of proof—then the class members would obtain no recovery at all. In contrast to those scenarios, the $12,250,000 Settlement allows for all class members and the class representatives to immediately receive monetary relief.

> **2. The potential length, complexity, and expense of further litigation favor approval.**

Settlement approval is also favored where "it allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Plaintiffs believe that they could have defeated motions for summary judgment, successfully certified the case as a class action, and then prevailed at trial, but they are also certain that any judgment would have been appealed. Defendants might raise challenges to—among other things—the viability of the liability claims, whether class certification is appropriate (either for liability or for damages), what relief is available to the class members, and the existence of injuries to the class members. Although Plaintiffs strongly believe in the correctness of their positions, losing these or other issues on appeal could reduce or eliminate a jury award. Regardless of the eventual outcome, those steps would have undoubtedly taken years to complete. Settlement avoids the possibility that class members will not receive a recovery. Settlement also eliminates the likelihood that they would have to wait years to recover anything the case was litigated through trial and an eventual appeal. This factor strongly supports final approval.

> **3. The lack of opposition to the settlement weighs in favor of final approval.**

In this case, there was no opposition to the Settlement. Not only were there no objections to the Settlement or the motion for fees, incentive awards, and expenses, but the one Class Member who voiced certain objections at the outset of the case voluntarily withdrew those

objections after the Settlement was announced. Dkt. 256; Dkt. 257. Beyond that, only 13 of the estimated 70,000-100,000 Class Members excluded themselves from Settlement. Ex. D (Kaminer Decl.) ¶ 26. And as described above, there was strong community support for the Settlement.

The lack of opposition to the Settlement, particularly when combined with the strong support and high claims rate, provides "strong circumstantial evidence favoring settlement." *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020–21 (N.D. Ill. 2000) (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements"); *In re AT&T II*, 789 F. Supp. 2d at 965 (an exclusion or objection rate of 0.01% of class members was "remarkably low" and supported the settlement); *see also CE Design Ltd. v. Franklin Edison Corp.*, 2022 IL App (2d) 190130-U, ¶ 50 (Ill. Ct. App. 2022) ("As one of our local federal district judges has noted, citing a well-known treatise on the matter, response rates in consumer class-action suits are typically below 10% of the identified class."). In short, more than twenty thousand Class Members showed their support for the Settlement by filing valid claims, and none indicated any opposition.

**4. The opinion of competent counsel supports final approval.**

The fourth factor the Court considers is the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Here, Plaintiffs Counsel's law firm has extensive experience litigating and settling class actions and other complex litigation of similar size and scope. *See generally* Dkt. 255-1. Aside from this case, Plaintiffs' counsel at Loevy + Loevy have significant experience prosecuting class

16

actions, they are successful trial lawyers, and they have secured some many large verdicts and settlements in class cases and others. *See id.*; *see also, e.g.*, *Rogers v. BNSF*, 19 C 3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022) (trial counsel in the first ever BIPA trial resulting in initial entry of judgment exceeding $220 million and subsequent settlement); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (class co-counsel in the largest ever TCPA settlement of $76 million); *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) (class counsel in $55 million settlement plus an assignment of insurance-related claims following trial on liability and sample damages trials); *Flood v. Dominguez*, Case No. 08-cv-153 (N.D. Ind.) (Loevy & Loevy class counsel in $7.2 million settlement). Based on their significant experience litigating and trying class actions and other complex cases, Plaintiffs' Counsel is well-equipped to weigh in on the strength of the settlement, and believe that the Agreement is fair, reasonable, adequate, and deserving of approval. *See* Dkt. 255-1 ¶¶ 64-70 (discussing resolution of case and how firm's experience assisted in evaluating settlement); *see also* Ex. E (Declaration of Scott Rauscher) ¶ 6 (discussing opinion that settlement is fair and reasonable).

   **5. The stage of the proceedings and the amount of discovery completed support final approval.**

   The last factor to consider concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp.*, 2011 WL 3290302, at *8 (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted).

   Discovery was well underway prior to being stayed pending the outcome of mediation. Dkt. 255-1 ¶¶ 52-62. The parties have exchanged thousands of pages of documents and had substantially completed their production of documents. *See id.* ¶¶ 57, 60. They had conducted

four significant depositions, including a Rule 30(b) deposition of the general demolition-contractor on the construction project at issue in the case, as well as a representative of the subcontractor that was responsible for the carrying out the demolition on April 11, 2020. *Id*. ¶ 61. As noted above, Plaintiffs also hired their own experts to conduct analysis of the potential environmental issues stemming from the demolition and to analyze and define the areas that were most impacted by the demolition. *Id*. ¶ 62. Thus, sufficient discovery has been conducted for the parties and the Court to evaluate the claims and defenses.

      **6.** **The settlement is not a product of collusion, and there are no "red flags."**

Although not a factor specifically set forth in *Synfuel*, courts in the Seventh Circuit also consider whether a settlement is the product of collusion, and whether there are any "red flags" present in the settlement that would suggest it is unfair to settling class members. *Eubank*, 753 F.3d at 722–29. Some of the red flags include (i) the failure to properly establish the size of the fund and the total class recovery, (ii) the reversion of unawarded attorneys' fees to the defendant, (iii) substantial alterations to existing class definitions, (iv) the use of coupons, rather than cash payments, for class compensation, and (v) overly complicated claim forms. *See id.* Here, the Court should not hesitate to grant final approval to the Settlement because the Settlement was not the result of collusion, nor does it raise any of the "red flags" identified by the Seventh Circuit and other courts in analyzing class settlements.

First, there can be no doubt that this Settlement was not the result of collusion. The parties initially and unsuccessfully negotiated on their own, and then, in the first instance, were unable to reach an agreement despite the assistance of the Honorable Wayne R. Andersen (Ret.) of JAMS. The parties only agreed to settlement terms after carefully considering a mediator's proposal from Judge Andersen. *See Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) ("arm's-length negotiations facilitated by a neutral mediator is one

factor … that supports a finding that the settlement was fair") (citing *McKinnie v. JP Morgan Chase Bank*, 678 F.Supp.2d 806, 812 (E.D. Wis.2009).).

Nor are any of the red flags discussed in *Eubank* present here. First, the Settlement provides a set fund of $12,250,000, with an expected recovery of approximately $317 per valid personal injury claim. Thus, unlike in *Eubank*, the Court here knows the total value of the Settlement as well as the minimum amount that each Class Member who submitted a valid claim will receive. Second, no material alterations to the class definitions were made, and the Settlement provides cash payments rather than coupons. Finally, no money will revert to the Defendants, and the claim forms were extremely straightforward (as evidenced, in part, by the high number of valid claims).

With the complete absence of any red flags and no objections from Class Members, the Court should grant final approval to the Settlement.

## V.    CONCLUSION

For the reasons addressed above, Plaintiffs respectfully request that the Court enter an order (1) granting final approval of the Settlement, and (2) providing such other and further relief as the Court deems reasonable and just.

Date: April 15, 2024                        RESPECTFULLY SUBMITTED,

/s/ Scott Rauscher
*One of Plaintiffs' Attorneys*
Jon Loevy
Michael Kanovitz
Steve Art
Scott Rauscher
Renee Spence
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607